685 A.2d 96

COMMONWEALTH of Pennsylvania, Appellee,

v.

Karl S. CHAMBERS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 26, 1995.

Decided Nov. 20, 1996.

Thomas L. Kearney, III, York, for Chambers.

H. Stanley Rebert, John W. Thompson, Jr., York, Robert A. Graci, Attorney General's Office, Harrisburg, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

Appellant, Karl S. Chambers, seeks relief from his second sentence of death. In his original appeal, this court affirmed his convictions of robbery and murder of the first degree but vacated his death sentence and remanded for resentencing due to the prosecutor's improper argument during the penalty phase of the trial. *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991). A new jury again imposed the death penalty. This appeal, therefore, involves only claims of error in the penalty phase.

In appellant's original penalty hearing, the prosecutor stated in closing argument: "Karl Chambers has taken a life.... As the Bible says, 'and the murderer shall be put to death.'" We held that the argument exceeded the bounds of permissible oratorical flair as it advocated to the jury that an independent source of law existed for imposing the death penalty on appellant. *Chambers,* 528 Pa. at 586, 599 A.2d at 644. We then held that "reliance in any manner upon the Bible or any other religious writing in support of the imposition of a penalty of death is reversible error per se." *Id.* The verdict of death which followed the improper argument might have been the product of passion, prejudice, or an arbitrary factor, so 42 Pa.C.S. § 9711(h)(4) required that appellant's death sentence be vacated and that he be awarded a new sentencing hearing. *Id.*

On remand, a new jury was selected on May 16 and 17, 1994. The resentencing hearing commenced on May 31, ending with the court's charge on June 3, 1994. The jury returned a verdict of death the same day. This direct appeal is pursuant to 42 Pa.C.S. § 9711(h)(1).

█ Appellant's first challenge to his death sentence is a two-pronged allegation of unconstitutionality. His initial argument is that "retroactive" application of 42 Pa.C.S. § 9711(h)(4) to his case offends his right to due process and equal protection. Appellant was convicted of crimes occurring on February 1, 1986. At that time, this court, in its automatic review of a death sentence, had two options: "the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence." 42 Pa.C.S. § 9711(h)(2), *repealed* effective December 21, 1988. In 1988, the statute was amended to read as follows:

... the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for further proceedings.... If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is disproportionate

to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing....

42 Pa.C.S. § 9711(h)(2) and (4), as amended 1988, Dec. 21, P.L. 1862, No. 179, § 2, imd. effective. The legislation provided that the amendment "shall apply to all criminal offenses committed on or after the effective date of this act and to all criminal cases or appeals pending on the effective date of this act." Act of 1988, Dec. 21, P.L. 1862, No. 179, § 3. Appellant recognizes that this language includes his case, and acknowledges that *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313 (1993), held that the statute was constitutionally permissible.

■ He attempts to distinguish his case from *Young* by characterizing the reason for Young's remand as procedural error but his own as "prosecutorial misconduct," attempting to bring his case within the ambit of *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992). *Smith* held that intentional prosecutorial misconduct, deliberately undertaken to deny the defendant a fair trial, required his discharge on double jeopardy grounds. The intentional prosecutorial misconduct in *Smith* descended to a level which "violate[d] all principles of justice and fairness embodied in the Pennsylvania Constitution's double jeopardy clause." *Id.* at 183, 615 A.2d at 324.

We do not find *Smith* applicable to this case. Our opinion in appellant's prior appeal did not characterize the improper Commonwealth argument as intentional prosecutorial misconduct, but rather as overstepping the "bounds of oratorical flair." *Chambers* at 584, 599 A.2d at 643. It was a violation of a rule first announced in that decision. The biblical reference was described by Mr. Justice McDermott in his dissenting opinion as an "isolated comment" in "the last sentence of a brief closing. This was not emotional oratory calling for divinely motivated retribution; rather it was a reference to one of the texts from which our social system has evolved." *Chambers* at 587, 599 A.2d at 644. It certainly cannot be

described as violating "all principles of justice and fairness embodied in the ... double jeopardy clause."

Appellant's reliance on *Commonwealth v. Story*, 497 Pa. 273, 440 A.2d 488 (1981), is likewise misplaced. Story was tried, convicted, and sentenced to death under the provisions of a statute later held to be unconstitutional in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977). Everyone who had been sentenced to death under the statute was uniformly resentenced to a sentence of life imprisonment. Story's case was on appeal at the time of the *Moody* decision; the result of Story's appeal was reversal of his conviction due to trial error and the grant of a new trial. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). His second trial resulted in a sentence of death under a new, constitutional death penalty statute. In his second appeal, this court vacated his sentence of death and imposed a life sentence, holding that application of the new death penalty statute in Story's second trial violated equal protection and due process. This was so because everyone sentenced to death under the prior, unconstitutional statute had automatically received a sentence of life imprisonment, even those who had been unsuccessful on appeal. To impose a new death sentence on Story, who had been successful on appeal, would have placed him in a worse position than everyone else sentenced under the prior statute. *Story*, 497 Pa. at 281, 440 A.2d at 491.

Appellant, by contrast, did not have his death sentence vacated because the prior sentencing statute was unconstitutional, but because of trial error. It is certainly not the case that everyone else sentenced under this statute prior to its amendment in 1988 was resentenced to a term of life imprisonment. Moreover, the *Story* court relied heavily on the presumption that statutes are not to have retroactive effect unless the legislature "clearly and manifestly" indicates a contrary intention, and the statute at issue in *Story* manifested no such intention. *Id.* at 276–77, 440 A.2d at 489–90. The amendment affecting appellant, on the other hand, expressly stated that it should apply "to all criminal cases and appeals pending on the effective date of this act," December 21, 1988.

We therefore hold that this issue is controlled by *Commonwealth v. Young, supra,* and that application of the amended procedure of 42 Pa.C.S. § 9711(h) did not deprive appellant of any constitutional right.

Appellant's second allegation of unconstitutionality is that he was denied due process and equal protection by virtue of the trial court's confusion as to the aggravating circumstance applied in his case: "[t]he defendant committed a killing while in the perpetration of a felony." 42 Pa.C.S. § 9711(d)(6). The court instructed the jury that it must be satisfied beyond a reasonable doubt that appellant had committed the robbery in the perpetration of the killing. Appellant argues that this is clearly not the law: "The law states specifically that the jury must find beyond a reasonable doubt that *the defendant committed a killing during the commission of a felony*—not the other way around." (Emphasis in appellant's brief).

The trial court has broad discretion in phrasing jury instructions, and may choose its own wording as long as the law is clearly, adequately and accurately presented to the jury for its consideration. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983). The reviewing court must consider the entire charge, not merely isolated fragments. *Id.* at 582, 470 A.2d at 70. We have examined the jury instructions in their entirety, including answers to questions submitted by the jury during its deliberations. Though the instructions on killing during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), are lengthy and repetitive, at times quoting the statute, the charge considered as a whole is an accurate statement of the law. The distinction between killing during a robbery and robbing during a killing is semantical.

In answering the jury's question, "Because the Defendant has been found guilty of first degree murder, are we compelled to accept the fact that the aggravating circumstances already exist? Are they a given?", the court stated:

The answer to that, ladies and gentlemen, is, No. You must accept the fact that the Defendant has been convicted of murder in the first degree. That is not before you because that's why we are having only the sentencing here, death or life.

However, the Commonwealth has presented the position that the killing was during the commission of a felony, and the felony in this case that they are contending is robbery. You have already been told that the Defendant was convicted of robbery by the other jury, but that you need not accept as fact. You must make a determination beyond a reasonable doubt that the robbery as I've defined it for you did occur in the commission of the killing, and that you must find beyond a reasonable doubt.

It's not a given because the jury must make a determination as to the aggravating circumstance, and it is for you to make a determination whether or not there was a robbery that occurred during the commission of the killing or during the killing of the woman whether she was killed in order to take money from her or money was taken from her at the time she was killed. That would be within the scope of the killing, but that is for you, and you must decide that beyond a reasonable doubt.

The difficulty was inherent in the jury's question; in view of appellant's convictions of robbery and first-degree murder, it might appear that the aggravating circumstance was predetermined. It was the court's task to explain that the two convictions, standing alone, did not establish the aggravating circumstance. It is insignificant that in doing so, the court transposed the terms robbery and killing, telling the jury it must determine whether the robbery occurred in the commission of the killing. The point of the question and the point of the answer was that it was for the jury to determine whether appellant committed the killing while in the perpetration of the robbery. In other words, though appellant's convictions of robbery and murder had been affirmed on appeal, the jury still had to decide whether the statutory aggravating circumstance had been established beyond a reasonable doubt. We

do not agree that the court's charge was confusing or erroneous.

■ The next issue is whether the trial court erred in denying a change of venue or the imposition of life imprisonment due to prosecutorial misconduct. Appellant's argument combines allegations of misconduct which *Commonwealth v. Smith, supra,* condemned, prohibiting a retrial, and allegations of pervasive and inherently prejudicial pretrial publicity which would require a change of venue. Appellant refers to the prosecutor's November, 1991 statements to a reporter that the supreme court's decision in this case was "outrageous, incredibly ludicrous, and completely ridiculous," and "I don't know any God-fearing prosecutor that has not used some scriptural or religious reference in arguing to a jury. God's law is the basis for Pennsylvania law and all law." The prosecutor allegedly made other public statements defending his use of the Bible in court. Appellant argues that these statements violated Pennsylvania Rule of Professional Conduct 8.4(d), engaging in "conduct that is prejudicial to the administration of justice"; the comment to Pa.R.P.C. 3.8, ignoring a prosecutor's "specific obligations to see that the defendant is afforded procedural justice"; Pa.R.P.C. 3.5, engaging in "conduct disruptive to a tribunal"; and Pa.R.P.C. 3.6(a), making public statements which "have a substantial likelihood of materially prejudicing an adjudicative proceeding." We do not agree.

■ Public criticism of judicial decisions, including decisions of this court, is not inherently prejudicial to adjudicative proceedings. We have already determined that the prosecutor's isolated biblical reference in the original penalty hearing was not intentional misconduct as in *Smith.* Likewise, the prosecutor's publicly aired opinion—that this court's decision in appellant's first appeal was outrageous, ludicrous, and ridiculous—was not prosecutorial misconduct which violated all principles of justice and fairness embodied in the double jeopardy clause. Appellant has therefore failed to establish that he was entitled to escape a resentencing hearing and to receive a sentence of life imprisonment.

■ In determining whether pretrial publicity entitled appellant to a change of venue, we must examine the nature and the extent of the publicity, as well as the presence or absence of a cooling-off period.

■ An application for a change of venue is addressed to the sound discretion of the trial court, which is in the best position to assess the community atmosphere and judge the necessity for a venue change, and its exercise of discretion will not be disturbed in the absence of an abuse of discretion. *Commonwealth v. Pursell,* 508 Pa. 212, 220–21, 495 A.2d 183, 187 (1985). The mere existence of pretrial publicity does not warrant a presumption of prejudice. *Commonwealth v. McCullum,* 529 Pa. 117, 125, 602 A.2d 313, 317 (1992). If pretrial publicity occurred, its nature and effect on the community must be considered. *Commonwealth v. Casper,* 481 Pa. 143, 151–54, 392 A.2d 287, 292–93 (1978). Factors to consider are whether the publicity was sensational, inflammatory, and slanted toward conviction rather than factual and objective; whether the publicity revealed the accused's prior criminal record, if any; whether it referred to confessions, admissions, or reenactments of the crime by the accused; and whether such information is the product of reports by the police or prosecuting officers. *Id.* If any of these factors exists, the publicity is deemed to be inherently prejudicial, and we must inquire whether the publicity has been so extensive, so sustained, and so pervasive that the community must be deemed to have been saturated with it. *Commonwealth v. Breakiron,* 524 Pa. 282, 288, 571 A.2d 1035, 1037 (1990). Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has significantly dissipated the prejudicial effects of the publicity. *Commonwealth v. Gorby,* 527 Pa. 98, 108, 588 A.2d 902, 906 (1991); *Commonwealth v. Breakiron,* 524 Pa. at 288, 571 A.2d at 1037. With respect to a cooling-off period, the *Breakiron* court noted the following guidance:

In testing whether there has been a sufficient cooling period, a court must investigate what a panel of prospective

jurors has said about its exposure to the publicity in question. This is one indication of whether the cooling period has been sufficient. Thus, in determining the efficacy of the cooling period, a court will consider the direct effects of publicity, something a defendant need not allege or prove.

Although it is conceivable that pre-trial publicity could be so extremely damaging that a court might order a change of venue no matter what the prospective jurors said about their ability to hear the case fairly and without bias, that would be a most unusual case. Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective. The discretion of the trial judge is given wide latitude in this area.

*Id.*, 524 Pa. at 288 n. 1, 571 A.2d at 1037–38 n. 1.

In applying these factors to appellant's case, we find no indication that the trial court abused its discretion. The prosecutor's statements, while rash, cannot be said to have had any significant effect on the community. The newspaper articles complained of were neither sensational nor inflammatory; they merely reported the prosecutor's statements regarding this court's earlier decision. Some articles contained a factual history of the case including appellant's conviction and the reversal of his original sentence. These articles cannot be deemed inherently prejudicial to appellant; if anything, they stigmatized the prosecutor as injudicious.

The final factor, dispositive in itself, is whether there was a sufficient lapse of time for the effects of the adverse publicity to dissipate. The publicity appellant complains of occurred primarily at the time of this court's decision in appellant's first appeal, which was in November of 1991. Appellant's resentencing hearing began in May of 1994.[1] Even if the prosecutor's public statements were blatantly and pervasively inflammatory, it is unlikely that fires of retribution should still be

1. Appellant filed motions in state court as well as federal court, accounting for the two-and-a-half-year delay in conducting the resentencing hearing.

burning in the hearts of potential jurors more than two years later, making it impossible for them to render a true and just verdict. The voir dire of prospective jurors confirms that, although a moiety knew something about the case, not a single one had a predisposition which would make it difficult to render an impartial decision based only on the evidence presented in court. It is clear that the publicity in this case did not require a change of venue.

Appellant's next argument is that the court erred in allowing a two-week time lapse between selecting a jury and commencing the hearing, and in refusing to sequester the jury. Appellant claims that it was an abuse of discretion to delay the hearing and to fail to sequester the jury, on the basis of nine prominent articles printed in York newspapers between May 3 and June 3, 1994. He argues that the hearing was a "media event," and that the jurors could not be trusted to follow the court's instructions not to read or watch any news coverage of the case.

The decision to grant or deny a request for a continuance or sequestration is within the sound discretion of the trial judge. *Commonwealth v. Crispell*, 530 Pa. 234, 608 A.2d 18 (1992). This court has defined the standard for abuse of discretion as follows:

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

*Mielcuszny v. Rosol*, 317 Pa. 91, 93–94, 176 A. 236 (1934). Furthermore, the decision not to sequester a jury shall not be reversed unless the defendant can make a proper showing of prejudice. *Gorby, supra.* In order to establish such a showing of prejudice, the defendant must show that the jurors are subject to extraneous influences or pressures, or that the case is the subject of unusual prejudicial publicity. *Id.* at 111, 588 A.2d at 908.

The purpose of the two-week continuance following selection of the jury was to permit the Commonwealth to conduct a psychiatric examination of appellant. At the end of the selection process, the trial judge instructed the jury to avoid press accounts of the trial and cautioned them to keep open minds during the period of the continuance. When the hearing was reconvened approximately two weeks later the jury was again questioned concerning possible exposure to media accounts of the case. None of the jurors indicated any such contact. Furthermore, the trial court gave the same cautionary instructions at the close of each day's proceedings.

Applying the *Mielcuszny* standard to the facts, the trial judge did not abuse his discretion in either granting the request for continuance or denying the request for sequestration. Additionally, given the fact that none of the jurors indicated exposure to any media accounts of the trial, appellant has failed to make a proper showing of prejudice. Therefore, in accordance with the *Gorby* standard, this court will not reverse the decision of the trial court.

Appellant next claims that the trial court erred in admitting a crime-scene photograph of the victim which had been deemed too prejudicial during the trial of the case. The photograph depicts the emaciated victim nude, lying face up, with blood visible. Appellant claims, "Not only was this photograph highly prejudicial, but the photograph was totally irrelevant. . . ." We do not agree. This claim lacks merit and warrants only brief discussion.

We have repeatedly held that: 1) photographs of a murder victim are not inadmissible *per se;* 2) the admission of such photographs is a matter within the sound discretion of the trial judge; and 3) only an abuse of that discretion will constitute reversible error. *Commonwealth v. Auker,* 545 Pa. 521, 681 A.2d 1305 (Pa.1996); *Commonwealth v. Lee,* 541 Pa. 260, 662 A.2d 645 (1995); *Commonwealth v. Jacobs,* 536 Pa. 402, 639 A.2d 786 (1994); *Commonwealth v. McCutchen,* 499 Pa. 597, 454 A.2d 547 (1982). Additionally, we have held that the test for determining the admissibility of such photographs

is whether they are inflammatory and, if so, whether their evidentiary value clearly outweighs their potential to impassion the jurors. *Auker,* 545 Pa. at 544, 681 A.2d at 1318. The photograph also must not be merely cumulative of other evidence. *Id.* at ——, 681 A.2d at 1318.

In this case, what was inadmissible at trial was admissible in the second sentencing hearing. First, a different jury had judged appellant's first sentencing hearing. This second jury had not heard the trial evidence, but was totally unfamiliar with the facts when the capital sentencing hearing began, as discussed infra. Second, the issues at the trial were different from the issues at the second sentencing hearing. The trial jury had to determine guilt or innocence of the crimes of murder and robbery. The second sentencing jury, on the other hand, had to accept the trial jury's verdict that appellant had committed first-degree murder and robbery. Its tasks were to determine whether the killing occurred during the perpetration of the robbery, and, if so, to balance that aggravating factor against the mitigating factors presented by appellant. Thus, the admissibility of photographic evidence must be decided by different factors of relevancy. Although the photograph in question clearly depicted the victim and her injuries, it was presented to show the jury the circumstances surrounding the victim's death, such as the geographically secluded nature of the area and the orientation of the body in relation to the victim's personal belongings which had been scattered about in the course of the attack. Indeed, the vast majority of the testimony relating to the photograph dealt with these circumstances and not the victim or her injuries. Because the only aggravating factor presented was that the killing occurred during the commission of a felony, i.e., a robbery, the evidentiary nature of the photograph in relating the location of the body to the victim's possessions clearly outweighs any potential of impassioning the jury. Therefore, we conclude that the admission of the photograph did not constitute an abuse of discretion.

The next issue raised by appellant is whether he was denied due process when the court forbade defense counsel from

using the term "life without parole," then erroneously instructed the jury on the parole issue, violating the holding in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). Appellant's jury sent a question to the court during deliberations, "Do we have the ability to choose life in prison without the opportunity of parole?" The court responded as follows:

[T]he statute unequivocally bars all parole for first degree murder whether the sentence is life or death.

It may be that the Defendant may not be eligible for parole, but there is in Pennsylvania a commutation of sentence in which a Defendant sentenced to life can be released, but that's not your prerogative.

Your prerogative is not to make the determination as to life or death. I like life rather than death. Set that aside. Your determination in this case is based on what you find with regard to aggravating and mitigating circumstances.

. . . .

But to give consideration as to what life means should not become part of your decision. Your decision is based on the law as I have given it to you.

Appellant claims the judge's response was a clear violation of the *Simmons* holding. Moreover, appellant's jury, like the *Simmons* jury, reached a verdict less than an hour after receiving the judge's answer to its question, giving the appearance that the answer prompted a quick decision to impose the death penalty. Appellant believes the injustice of the process is particularly apparent in his case wherein the jury found only one aggravating circumstance and numerous mitigating circumstances, but still imposed the death penalty.

We have held that *Simmons* mandates that "where future dangerousness is at issue and a specific request is made by the capital defendant, it is a denial of due process to refuse to tell a jury what the term 'life sentence' means." *Commonwealth v. Christy*, 540 Pa. 192, 216, 656 A.2d 877, 889 (1995). The jury question in this case, raising the issue of "life in prison without the opportunity of parole," is virtually identical to the

jury question in *Simmons*. The United States Supreme Court interpreted the question to bear on the issue of future dangerousness, which was unavoidable as the prosecutor had raised that issue in his argument to the jury. It is possible that appellant's jury, as well, was concerned with the issue of appellant's danger to the community if he were released on parole; as the issue had not been raised by the prosecutor during appellant's sentencing hearing, however, it is also possible that the jury was simply concerned with the length of appellant's punishment rather than the collateral consequence of danger.

 Even if we interpret the jury question in appellant's case as implicating the issue of future dangerousness, as appellant suggests, there is no violation of the *Simmons* mandate. The trial court did not refuse to tell the jury what "life sentence" means. The court correctly instructed the jury that "the statute unequivocally bars all parole ... whether the sentence is life or death." The court correctly added that parole is not the only possible means by which a prisoner may be released from prison. The court then correctly instructed the jurors that it was not their prerogative to debate whether they "like life rather than death," but their responsibility was to weigh aggravating and mitigating circumstances. The jury was thus informed, as accurately as possible, of the meaning of a life sentence, and there was no deprivation of due process of the sort prohibited in *Simmons*.

 Appellant's next claim is that the court's erroneous denial of challenges for cause during voir dire entitles him to a new trial. He alleges that one prospective juror admitted he would be unable to consider mitigating circumstances yet the court denied appellant's challenge for cause, forcing him to use a peremptory challenge. In examining a second potential juror, the prosecutor made light of the "Bible issue," telling the juror: "I won't quote the Bible, Dan, so don't be worried." [2] This allegedly disrupted "the solemnity and sobriety

2. Despite the apparent flippancy of the remark in isolation, the record reveals that frequently both defense counsel and the prosecutor ad-

to which a defendant is entitled in a system that subscribes to any notion of fairness." *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Again, appellant's challenge for cause was denied and he was forced to use another peremptory challenge.

We have held that the decision to grant or deny a challenge for cause is within the sound discretion of the trial judge and will not be reversed absent a palpable abuse of that discretion. *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993); *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). Furthermore, a trial judge may properly refuse to excuse a juror for cause when the judge believes that the juror would be fair and impartial. *Marshall* at 497, 633 A.2d at 1104. It is also well established that it is harmless error when a juror who should have been excluded for cause is actually excluded by a peremptory challenge, if the defense does not exhaust its peremptory challenges. *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Ingber,* 516 Pa. 2, 531 A.2d 1101 (1987); *Commonwealth v. Moore,* 462 Pa. 231, 340 A.2d 447 (1975).

Appellant has mistakenly relied upon *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), to support his position concerning the juror who admitted a predisposition toward the death penalty. *Morgan* is distinguishable from the present case in that it dealt with a trial court's refusal to allow questioning of the venire in order to determine such predispositions. Specifically, although the trial court in *Morgan* allowed the prosecution to question potential jurors regarding their willingness to impose a death penalty, the court did not allow the defense an opportunity to question the jury pool regarding whether they would automat-

dressed prospective jurors by their given names. The prospective juror in question was first addressed as Dan by appellant's defense counsel, then questioned at length regarding his awareness of the prosecutor's statements about the Bible during appellant's original penalty hearing. The prosecutor's quoted remark was in response to that questioning.

ically vote for the death penalty once a guilty verdict had been returned.

In the present case, the defense was given the opportunity to question all potential jurors regarding their stance on the death penalty. Initially, the first juror in question stated that he would be inclined to vote automatically for the imposition of the death penalty. However, the first time defense counsel directly asked the juror whether he would have any difficulty following the court's instructions regarding consideration of aggravating and mitigating (with emphasis on mitigating) circumstances, he unequivocally stated that he would not. It was only after persistent questioning by defense counsel that the juror again gave an indication that he would automatically vote to impose the death penalty. Nevertheless, upon further questioning by the prosecution the juror explicitly stated that he would comply with the court's instructions. Similarly, the second juror in question, upon examination by the court, indicated that comments regarding the Bible would not influence his decision on sentencing and that he would be able to render a fair verdict.

The trial judge must interpret the answers and demeanor of all potential jurors to evaluate their ability and willingness to render a fair verdict according to the evidence presented. *Commonwealth v. Lane*, 521 Pa. 390, 555 A.2d 1246 (1989). There is no evidence in the record to suggest that the trial judge abused his discretion or that the potential jurors' ability to render a fair verdict was so questionable as to necessitate their removal for cause. Even if these jurors should have been excluded for cause, since the appellant did not exhaust his peremptory challenges this denial would amount to nothing more than harmless error.

We consider the appellant's reliance upon dicta from *Murphy* neither relevant nor persuasive. The prosecutor's offhand remark concerning the Bible may not have risen to the level of solemnity considered appropriate by the appellant, but there is no evidence to suggest, as appellant claims, that the remark disrupted or influenced the proceedings in any way.

These claims regarding the court's improper denial of challenges for cause lack merit.

Appellant's next argument is that his privilege against self-incrimination was violated in two ways in the resentencing process. First, he claims the court erred in ruling that a jury would be informed if appellant failed to cooperate in a psychiatric examination sought by the Commonwealth. He argues that he was put in the position of either cooperating with the examination, thereby changing his trial strategy due to the Commonwealth's possession of information obtained in the examination, or refusing to cooperate and having that refusal disclosed to the jury, creating potential prejudice.

Appellant correctly restates the U.S. Supreme Court's holding that where Fifth Amendment issues are concerned there is "no basis to distinguish between the guilt and penalty phases of . . . [a] . . . capital murder trial." *Estelle v. Smith*, 451 U.S. 454, 463, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359, 369 (1981). However, we easily distinguish the facts in the present case from those in *Estelle*. In *Estelle*, the State, during the sentencing phase, introduced a psychiatrist's testimony regarding his evaluation of the defendant where, during the course of the evaluation, the defendant was never advised of his Fifth Amendment rights and did not have counsel present. The Supreme Court affirmed the federal circuit and district courts' holding that the defendant's Fifth Amendment rights had been violated and vacated his death sentence. *Id.* *See also Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In the present case, appellant claims that the Commonwealth's and the psychiatrist's failure to advise him of his *Miranda* rights entitles him to a new sentencing hearing. However, although appellant was not advised of his *Miranda* rights by either the Commonwealth or by the examining psychiatrist, unlike *Estelle*, appellant had the benefit of counsel throughout the course of all proceedings including the mental examination, thereby satisfying any *Miranda* requirements.

■ Even if *Miranda* requirements had not been satisfied, appellant has failed to demonstrate how, in fact, he was prejudiced since this evidence was never introduced. Although appellant may be correct in stating that the threat of informing the jury of his non-cooperation amounts to a court-ordered, coerced, evaluation, the mere possession of the evaluation results is not enough to prove actual prejudice. Again, the evidence was not introduced and the jury was not informed even of the existence of such evidence, let alone the appellant's cooperation or non-cooperation. For these reasons, appellant's claim lacks merit.

■ Second, appellant claims the district attorney violated his right to remain silent by informing the resentencing jury that appellant did not testify at his trial. He argues that such information is constitutionally prohibited under *Commonwealth v. Freeman*, 386 Pa.Super. 105, 562 A.2d 375 (1989). This argument is meritless, as the prosecutor's inquiry was in response to the testimony elicited by defense counsel: "At trial or at a previous proceeding in this matter you testified, did you not?" Appellant answered, "Yes, sir." The answer was truthful because appellant had testified at his original sentencing hearing. On cross-examination, the prosecutor asked, "Mr. Chambers, at the last trial you didn't testify at the trial phase of this case at all, did you?" Appellant answered, "No, sir." Defense counsel clearly opened the door for the prosecutor to inquire into appellant's silence at trial, if only to clarify a possibly misleading answer on direct examination.

■ Moreover, appellant's argument overlooks the cumbersome burden on the prosecution in a resentencing hearing following a remand in a case such as this. When the same jury decides guilt and penalty, the evidence presented at the sentencing phase need not include everything presented in the guilt phase. The jury is well acquainted with the trial evidence. Here, however, as we discussed supra, the jury is called upon to sentence the defendant to life imprisonment or the death penalty without having attended his trial. It is incumbent on the prosecutor to prove beyond a reasonable

doubt everything that will enable the jury to perform its duty. This entails duplicative presentation of evidence presented at trial, but not in the original sentencing hearing, to place the resentencing jury as nearly as possible in the shoes of the original jury. If it was error for the resentencing jury to learn that appellant did not testify at his trial, the error was harmless, as appellant's original jury knew, when it deliberated on his sentence, that he had not testified at his trial.

■■■ Appellant next claims that the court abused its discretion by permitting the Commonwealth to recall a witness after the close of the Commonwealth case so the witness could "correct" his testimony. The last prosecution witness was a detective who testified about his investigation of the homicide. The following day, in the middle of the defense case, the Commonwealth received the court's permission to recall the detective to clarify certain dates and times pertinent to his investigation. Appellant argues that the exact dates and times specified in the second period of testimony were cumulative, adding absolutely nothing to the proceeding, and that the process was merely a ploy to interrupt the presentation of the appellant's case.

■■■ As appellant admits, the decision to permit either side to reopen its case, recalling witnesses and presenting additional evidence in order to prevent a failure or miscarriage of justice, is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557 (1990); *Commonwealth v. Evans,* 488 Pa. 38, 410 A.2d 1213 (1979); *Commonwealth v. Irving,* 485 Pa. 596, 403 A.2d 549 (1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 676, 62 L.Ed.2d 651 (1980).

The purpose of recalling this witness was to clarify the specific details of several events regarding the murder investigation (including dates, times, and interviews) which he could not recall during previous testimony. Approximately eight years had passed since the witness testified in the first sentencing hearing. During cross-examination, the witness testified that he was unable to precisely recall certain events

surrounding the murder investigation about which he had testified years earlier. This confusion was due primarily to his inability to locate his supplemental notes concerning the investigation upon which he had relied in his previous testimony.

After reviewing the transcript of his testimony from the previous hearing, the witness was recalled and allowed to correct and elaborate on his testimony regarding subject matter raised by appellant's counsel during cross-examination. Appellant's claim—that complete answers to his own line of questioning are cumulative—is absurd. Considering the length of time that had elapsed since the investigation and applying the *Mielcuszny* standard, *supra,* we cannot agree that the trial judge abused his discretion. Therefore, this claim lacks merit.

 In a related claim, appellant argues that the court abused its discretion by permitting the Commonwealth to claim surprise and cross-examine its own witness. The witness, appellant's acquaintance, gave inconsistent testimony regarding a statement allegedly made by appellant. The Commonwealth expected this witness to testify (as he had previously) that appellant had admitted to the murder. Instead, the witness testified that appellant stated only that he believed he was a suspect in the murder.

 Pennsylvania "courts have been liberal in allowing a party to cross-examine his own witness when it is believed that the interests of truth and justice so require." *Commonwealth v. Smith,* 511 Pa. 343, 353, 513 A.2d 1371, 1376 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). The general rule for allowing a party to cross-examine his own witness on a plea of surprise is that the current testimony must be: 1) unexpected; 2) contradictory to prior statements; and 3) harmful to the party calling the witness and beneficial to the opposing side. *Id.* at 353, 513 A.2d 1371. *See also Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976)(permitting parties surprised by adverse statements

made by their own witnesses to cross-examine them based on prior inconsistent statements).

The inconsistent statements in this case clearly meet the criteria for allowing a party to cross-examine his own witness. The statements were unexpected, contradictory, and harmful to the calling party while benefitting the opposition. The trial court did not abuse its discretion by allowing the Commonwealth to cross-examine this witness.

■■■ Appellant's final claim is that the court abused its discretion when it refused to allow appellant personally to interview the venire.

■■■ "[T]he manner in which *voir dire* will be conducted is left to the discretion of the trial judge ... [and] ... will be reversed only where the record indicates an abuse of the discretion...." *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 201, 555 A.2d 846, 852 (1989). Furthermore, as we stated in *Abu–Jamal*, there is no requirement, constitutional or otherwise, that a party be permitted to engage personally in voir dire questioning. *Id.* at 201, 555 A.2d at 852.

In the present case, appellant sought to question a potential juror himself. The prosecution objected and the trial court denied the request. Appellant argues that defendants in other York County cases had been allowed to question potential jurors personally, and therefore, he should have had the same opportunity. Just as the judges in other cases exercised their discretion in allowing such questioning, however, the trial judge in this case exercised his discretion in disallowing such questioning. Since appellant had no right to engage personally in the questioning and since the manner of questioning was within the trial court's discretion, we will not reverse the trial court's decision.

■■■ We have complied with our duty under 42 Pa.C.S. § 9711(h)(3)(iii) to review sentences of death from the standpoint of proportionality to sentences imposed in similar cases. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 63, 454 A.2d 937, 961 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77

L.Ed.2d 1327 (1983). We reviewed the sentence imposed on appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984). The jury found the existence of the aggravating factor in 42 Pa.C.S. § 9711(d)(6) (killing while in the perpetration of a felony) and the existence of the mitigating factor in 42 Pa.C.S. § 9711(e)(1) (no significant history of prior criminal convictions). The jury further found that the aggravating factor outweighed the mitigating factor and imposed the death penalty. This sentence is not excessive nor disproportionate to sentences imposed in similar cases. Further, the record does not provide any basis for belief that the sentence of death was the "product of passion, prejudice or any other arbitrary factor." *See* 42 Pa.C.S. § 9711(h)(3)(i). Also, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S. § 9711(d), *viz.* § 9711(d)(6). *See* 42 Pa.C.S. § 9711(h)(3)(ii). Accordingly, the sentence must be affirmed.

Judgment of sentence affirmed.[3]

NIX, former C.J., and MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

ZAPPALA, J., concurs in the result.

---

3. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).