J-S22002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAVID DERRY | : | |
| | : | |
| Appellant | : | No. 79 MDA 2019 |

Appeal from the PCRA Order Entered October 25, 2018
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000078-2016

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                              **FILED AUGUST 14, 2019**

Appellant, David Derry, appeals from the order denying his petition filed

pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

We affirm.

On direct appeal, a panel of this Court set forth the history of this case

as follows:

> Briefly, on January 11, 2016, Appellant and two co-
> conspirators stole merchandise from Walmart on two separate
> occasions during the same day and used a stolen vehicle to leave
> the store with the merchandise.   Based on these incidents,
> Appellant was charged with the following: (1) receiving stolen
> property, (2) conspiracy to receive stolen property, (3) retail theft
> (amount of $1,935.21), (4) retail theft (amount of $186.48), (5)
> conspiracy to commit retail theft (amount of $1,935.21), (6)
> conspiracy to commit retail theft (amount of $186.48), 7) theft by
> unlawful taking, and (8) conspiracy to commit theft by unlawful
> taking.  ***See*** Amended Criminal Information, 3/8/2016.
>
> On March 9, 2016, the Commonwealth filed notice of its
> intent to consolidate the trials of Appellant and his co-conspirators

_____

\* Retired Senior Judge assigned to the Superior Court.

pursuant to Pa.R.Crim.P. 582(B)(1). After one continuance was granted at Appellant's request, the trial court ordered that jury selection occur on July 25, 2016. Jury selection only for Appellant's case occurred that day. Also on that day, the trial court ordered that trial would begin on September 20, 2016.

On September 20, 2016, 31 minutes prior to trial's commencement, Appellant filed a motion *in limine* arguing, *inter alia*, that because he was not being tried together with his co-conspirators, the "conspiracy charges [should] be dismissed." N.T., 9/20/2016, at 4; **see also** Motion *in Limine*, 9/20/2016. The Commonwealth responded that it was the prerogative of the prosecutor to decide whether to try co-conspirators together, and despite its prior notice, the Commonwealth had chosen not to do so in this situation. The Commonwealth also suggested it was too late to raise this issue, as Appellant was aware he was being tried separately at jury selection in July. The trial court denied Appellant's motion *in limine*, and Appellant proceeded to his jury trial. At the conclusion of the jury trial, the trial court granted Appellant's motion for judgment of acquittal as to counts 7 and 8. N.T., 9/20/2016, at 188. The jury found Appellant guilty of the first six counts in the information. The trial court did not schedule sentencing.

On January 4, 2017, Appellant filed a motion to dismiss this case because he was not sentenced within 90 days of his conviction pursuant to Pa.R.Crim.P. 704. On the following day, the Commonwealth filed a motion to request expedited sentencing in this matter. On January 9, 2017, Appellant was sentenced [to serve an aggregate term of incarceration of forty-two months to ten years]. Appellant timely filed a post-sentence motion. The motion was denied by order docketed on March 3, 2017. Appellant timely filed a notice of appeal.

**Commonwealth v. Derry**, 181 A.3d 1264, 614 MDA 2017 (Pa. Super. filed December 22, 2017) (unpublished memorandum at 1-3). This Court affirmed Appellant's judgment of sentence. **Id**. at 11.

On January 22, 2018, Appellant filed a petition for allowance of appeal with our Supreme Court. On February 8, 2018, Appellant discontinued his appeal.

On February 15, 2018, Appellant filed, *pro se*, the instant PCRA petition. On February 21, 2018, the PCRA court appointed counsel, who then filed an amended PCRA petition. The Commonwealth filed a response on July 16, 2018. The PCRA court held hearings on August 21, 2018, and October 25, 2018. On October 25, 2018, the PCRA court entered an order denying relief. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether the PCRA court erred by finding that trial counsel did not provide ineffective assistance by failing to file a suppression motion to challenge the police's warrantless entry into the hotel room where Appellant/Defendant and his codefendants were found and arrested?

II. Whether the PCRA court erred by refusing to continue the proceedings to allow counsel to investigate a witness who Appellant/Defendant has reason to believe had recently returned to the area and had information pertaining to the suppression issue, to wit, the owner of the motel where the Appellant/Defendant was found and arrested following a warrantless entry into his motel room?

Appellant's Brief at 4.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super.

2015) (quoting **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant first argues that trial counsel rendered ineffective assistance by failing to file a suppression motion. Appellant's Brief at 11-14. Appellant contends that counsel should have filed the suppression motion to challenge the warrantless entry by police into the hotel room where Appellant was discovered and arrested. *Id*. at 11. Appellant asserts that none of the exceptions to the warrant requirement were present. *Id*. at 12. However, Appellant concedes that, if the police were in a common area when they knocked on Appellant's door, there is merit to the Commonwealth's claim that the police entry was constitutional. Specifically, Appellant states the following:

> Admittedly, there is an unresolved wrinkle within the suppression issue presented in this case. **The troopers testified that the [common] kitchenette area was not secured by a locked door** (N.T. Dolney Suppression Hearing, 01/19/17, p. 77 (herein after "Dolney")), **while Appellate** [sic] **testified that he was given a key to access that area and believed it to be part of the area he rented**, (PCRA II at 29-30). "The crucial distinction between protected and unprotected areas … is whether

- 4 -

an unrelated person had unfettered access to the area. If even one unrelated person has an unfettered right to access an area, the area is not protected ....” *Commonwealth v. Reed*, 851 A.2d 958, 962 (Pa. Super. 2004).

> In other words, **if the troopers' version is credited, their entry into the first room is constitutional.** However, **if Appellant's version is credited, their entry into the first room is unconstitutional and all evidence obtained after that point should have been suppressed**. Notably, the Commonwealth has the burden to establish that the search was constitutional. *See*, Pa.R.Crim.Pro. 581(H). The Commonwealth put on no evidence regarding the layout of the Valley Lodge; therefore, the decision to deny Appellant relief as to this issue is based solely upon a negative assessment of [Appellant's] credibility.

Appellant's Brief at 12-13 (emphases added).

Appellant essentially admits that, if the area in front of the door to the room that he occupied was a common area, the state troopers had a constitutional right to be in the space. Conversely, Appellant posits that, if the area was not a common space, the police entry into that area was unconstitutional, and trial counsel was ineffective for failing to file a motion to suppress.

Appellant's issue challenges the effective assistance of his trial counsel. Our Supreme Court has long stated that, in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

We observe that claims of ineffective assistance of counsel are not self-proving. ***Commonwealth v. Wharton***, 811 A.2d 978, 986 (Pa. 2002). In addition, we note that where an appellant is not entitled to relief with regard to the underlying claim upon which his ineffectiveness issue is premised, he is not entitled to relief with regard to his ineffectiveness challenge. ***Commonwealth v. Ousley***, 21 A.3d 1238, 1246 (Pa. Super. 2011). Thus, trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Commonwealth ex rel. Washington v. Maroney***, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. **Pierce**, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009) (citing **Commonwealth v. Sneed**, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. **Commonwealth v. Baker**, 880 A.2d 654, 656 (Pa. Super. 2005).

Further, it is presumed that the petitioner's counsel was effective unless the petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. **Commonwealth v. Battle**, 883 A.2d 641, 648 (Pa. Super. 2005) (citing **Commonwealth v. Abu-Jamal**, 720 A.2d 79 (Pa. 1998)).

We note that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. **Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given

their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006).

We are aware that when presented with a challenge to the admission of evidence, Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." ***Schneckloth v. Bustamonte***, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); ***Commonwealth v. Blair***, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

***Commonwealth v. By***, 812 A.2d 1250, 1254 (Pa. Super. 2002).

Our Supreme Court has long held that a defendant seeking suppression of seized evidence has the initial burden of establishing standing and a legitimate expectation of privacy in the area searched or the items seized. ***Commonwealth v. Hawkins***, 718 A.2d 265, 267 (Pa. 1998). "There is no question that under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search." ***Commonwealth v. Perea***, 791 A.2d 427, 429 (Pa. Super. 2002). "However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched." ***Id***. (citing ***Commonwealth v. Sell***, 470 A.2d

457 (Pa. 1983)). "[A] defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests." **Commonwealth v. Hunter**, 963 A.2d 545, 553 (Pa. Super. 2008) (quoting **Commonwealth v. Millner**, 888 A.2d 680 (Pa. 2005)).

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

**Commonwealth v. Brundidge**, 620 A.2d 1115, 1118 (Pa. 1993) (internal citations and quotation marks omitted). As our Supreme Court has noted, "a guest in a motel or hotel room has a legitimate expectation of privacy during the period of time it is rented." **Commonwealth v. Brundidge**, 620 A.2d 1115, 1118 (Pa. 1993).

However, as this Court has explained regarding common areas, a tenant does not have a legitimate expectation of privacy in the common hallway and stairs of a multiunit apartment building. **Commonwealth v. Reed**, 851 A.2d 958, 962 (Pa. Super. 2004). The holding in **Reed** was based upon the fact that a tenant does not have the right to exclude residents or other authorized individuals from accessing the shared areas in an apartment building. The **Reed** Court held: "The crucial distinction between protected and unprotected areas … is whether an unrelated person has unfettered access to the area. If

even one unrelated person has access to an area, the area is not protected in Pennsylvania from government searches and seizures." *Id*. (footnotes omitted). *See also Commonwealth v. Murphy*, 795 A.2d 997, 1004 (Pa. Super. 2002) (finding no expectation of privacy in an apartment building's common storage room to which numerous residents, employees, and the utility company all had keys).

At the conclusion of the PCRA hearing, the court offered the following thoughts with respect to this claim of ineffective assistance lacking merit:

> [Appellant] testified he was asleep, and the first thing he remembered was the police yelling at him and shining flashlights at him to get up and get out, that it was the police. But then he wants to backtrack and testify as to events that occurred while he was asleep. There's no credibility there once again. Even looking at the drawing [of the motel], I don't find [Appellant's] testimony credible as to the entry of the first door. The [c]ourt would note that to get in to the office of this [establishment], you have to go through the first door, and the office accesses this [same common] area prior to going in to room two that's marked there. Room two has a separate door, with the bed and bathroom in it that's separate from the [common] area with the kitchenette, table, and couch. Whoever's going in and out of that office, has to get in to that [common] area. Of course [Appellant] would have received a key if that door is locked, as would anyone that's going in to that [common] area.
>
> The [c]ourt does not find that [Appellant's] testimony of the information in the drawing would have changed the outcome of the suppression motion that was addressed by President Judge Hudock in the companion case of Commonwealth versus Dolney,[1] where Judge Hudock denied [Dolney's] Motion To Suppress the Evidence, which [Appellant] in this case, is claiming his trial counsel was ineffective in [not] raising it. [Dolney's motion] was

---

[1] Jerome Dolney was also discovered in the motel room with Appellant and was charged with various crimes.

decided subsequent … to this case, by Judge Hudock. The additional facts provided by [Appellant] do not persuade the [c]ourt that the error – or that Judge Hudock's decision was in error. …

So that issue [of ineffective assistance], [Appellant] has failed to meet his burden.

N.T., 10/25/18, at 80-81. We are constrained to agree with the PCRA court.

Our review of the record reflects that, at the PCRA hearing held on October 25, 2018, the transcript from the suppression hearing held in the matter of **Commonwealth v. Jerome Dolney**, CP-60-CR-0000124-2016, on January 19, 2017, was made part of the record. N.T., 10/25/18, at 9-11. At the suppression hearing, both state troopers, who were present for the arrest of Appellant, testified regarding the circumstances surrounding their discovery of Appellant in a motel room. N.T., 1/19/17, at 49-70, 72-80.

Trooper Mark Evans testified that he and Trooper Anthony Bickhart were dispatched to the Valley Lodge Motel in Shamokin Dam, Pennsylvania, to investigate a stolen vehicle and "the subjects [who] were wanted in connection with a theft [at a Walmart store]." N.T., 1/19/17, at 50. Upon arriving at the motel parking lot, the officers discovered the vehicle in question, the interior of which contained items matching the list of products stolen from the Walmart store. *Id*. at 51-52. The officers then entered the motel in an effort to find the people associated with the vehicle. *Id*. at 52. The officers proceeded to the front desk, which was unoccupied. *Id*. However, there was a note on the front desk asking the "Occupants of Room 2" to "leave the key at the desk."

- 11 -

*Id*. Because room two was close to the front desk, the two officers approached the door to the room, and Trooper Bickhart knocked on the door. *Id*. When Trooper Bickhart knocked on the door, the door opened. *Id*. at 52-53. The officers then noticed two people on a bed, one of whom resembled a picture of the perpetrators of the theft, which Trooper Evans had in his possession. *Id*. at 53. The officers then asked the two occupants to "come out into the common area." *Id*.

Likewise, Trooper Bickhart testified that when he knocked on the door to room two, "[t]he door wasn't even secured. It just opened." N.T., 1/19/17, at 73. The officer further stated that when the male on the bed appeared to match the person in the photograph, the officers "requested that the occupants of the room step out into a communal area." *Id*. at 74. When asked to describe the common area, Trooper Bickhart offered the following:

> Well, initially when you walk in the front door [of the motel], I believe you go up -- you have a choice to go up or down. You're kind of on a level surface when you first walk in. At the top of the steps, I'm going to say that's where the [front] desk was with the note on it. And then we went through to the right, I believe it was kind of a double door archway. There was more like a living room area, couch, chairs, and just a large -- larger communal area.

*Id*. at 76-77. Trooper Bickhart further observed that the common area is "open clearly to the public when they first walk in." *Id*. at 77.

In light of the above testimony offered at Dolney's suppression hearing, and incorporated into the record at Appellant's PCRA hearing, we conclude that the troopers were in a communal area when they approached the door to

the motel room occupied by Appellant and knocked. Accordingly, Appellant did not have a privacy interest in this common space, and the police were not prevented from entering that area lawfully. Thus, there is no merit to the underlying claim that would support Appellant's allegation that trial counsel was ineffective for failing to file a suppression motion based upon the police activity. Hence, Appellant's claim of ineffective assistance of counsel fails.

Appellant next argues that the PCRA court erred in refusing to grant a continuance in the PCRA proceedings. Appellant's Brief at 15-17. Appellant claims that the PCRA court should have granted a continuance in order "to allow [PCRA] counsel to investigate the whereabouts and potential testimony of a witness that Appellant had reason to believe had recently returned to the country." *Id*. at 15. Appellant claims that the owner of the motel recently returned to the United States and could offer "dispositive testimony" regarding the suppression claim. *Id*. Appellant asserts that the "denial of this opportunity constitutes an abuse of discretion." *Id*.

> The decision of whether to grant or deny a request for a continuance is within the sound discretion of the trial judge. ***Commonwealth v. Chambers***, 546 Pa. 370, 387, 685 A.2d 96, 104 (1996). In this context, our Supreme Court has defined "abuse of discretion" as follows:
>
>> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

*Id*. The refusal to grant a continuance constitutes reversible error only if "prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Griffin*, 804 A.2d 1, 12 (Pa. Super. 2002).

*Commonwealth v. Pries*, 861 A.2d 951, 953 (Pa. Super. 2004). "As we have consistently stated, an abuse of discretion is not merely an error (sic) judgment." *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa. Super. 2009).

Our review of the record reflects that at the second PCRA hearing, which was held on October 25, 2018, PCRA counsel alerted the court that counsel had recently become aware of a potential witness. The following transpired when PCRA counsel initially suggested that the record be left open in order to investigate the additional witness:

THE COURT: Do you need additional time to prepare?

[APPELLANT]: I do.

[PCRA COUNSEL]: Well, we would – I believe it's appropriate to leave the record open … . [**Appellant] also did recently**, as in this morning, **let me know of another potential witness** as to the suppression issue. But I didn't want to delay things any further as far as getting [Appellant's] testimony on record today.

THE COURT: Well, if he's just letting you know about a new witness, I'm not leaving it open for that. We're – otherwise, we will continue this . . . forever.

[PCRA COUNSEL]: We had no way of communicating beforehand as far as that witness goes. It's a witness who we understand recently returned to the country. And again, I can't even – I can't even verify that because I just learned about it this morning, Judge.

N.T., 10/25/18, at 62-63 (emphases added).

- 14 -

At the conclusion of the PCRA hearing, the following transpired, in which PCRA counsel again suggested that the matter be continued in order to investigate the potential witness:

[PCRA COUNSEL]:  As discussed earlier, I would ask that the record be kept open that I could investigate the witness that [Appellant] was only able to inform me about today due to communication difficulties we have had with the state prison system.

THE COURT:  How many times have you … . How many times have you spoke [sic] with [Appellant] about this case prior to this proceeding, including the last time we were in court, [PCRA counsel]?

[PCRA COUNSEL]: I visited [Appellant] at SCI Benner in June.  At that time, we – I remember specifically talking to him about the hotel owner.  He informed me, at that point, [the hotel owner] was out of the country.  And that was kind of a dead end at that point.  I believe there was a letter exchanged prior to the first hearing.  And then that's about when the difficulties with the state prison system started with the mail.  It's not just been [Appellant], Your Honor.  I've had other clients in state prison.

THE COURT:  Oh, no.  I'm not questioning the communication issues at the state prison.  But you were here on August 21st.  So you had the ability, and I am assuming, did talk face-to-face with [Appellant].

[PCRA COUNSEL]:  Absolutely.

THE COURT:  Because that was continued.  And [Appellant] didn't mention that other witness to you at that point?

[PCRA COUNSEL]:  I don't know that he was aware of it at that point.

THE COURT:  Okay.

[PCRA COUNSEL]:  What [Appellant] is telling me is he's hearing about this guy being back in the area from conversations he had in jail after his hearing.

- 15 -

THE COURT: But he would have been aware of the witness at the time of the trial. If he wasn't aware of the witness in August of this year, long after the trial, how could [Defense Counsel] be ineffective for not having a witness here? Would you agree with me?

[PCRA COUNSEL]: I'm sorry, Your Honor. I'm not – I don't know if that witness was discussed with [Defense Counsel]. I didn't know to ask [Defense Counsel] about it until this morning.

THE COURT: Okay. I'm not continuing it. This is the second day of these proceedings. I'm making a decision today.

N.T., 10/25/18, at 75-77.

We conclude that Appellant has failed to establish an abuse of discretion by the PCRA court in declining to grant his motion for continuance. Appellant has failed to demonstrate that in reaching a conclusion, the PCRA court has overridden or misapplied the law. Further, Appellant has not established that the judgment exercised by the PCRA court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. Accordingly, Appellant has not shown that the PCRA court's decision refusing to continue this matter constituted an abuse of discretion. Consequently, Appellant's claim lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019