J-S64008-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEMETRIUS D. GIBSON | : | |
| | : | |
| Appellant | : | No. 117 WDA 2019 |

Appeal from the PCRA Order Entered December 21, 2018
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001873-2013

BEFORE: BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: FILED JANUARY 7, 2020

Demetrius D. Gibson appeals from the order that dismissed his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"). Also before us is Gary F. Vito, Esquire's application to withdraw as counsel.[1] We affirm.

The trial court summarized the factual history of this case as follows:

. . . [Appellant] was involved in a relationship with Elizabeth [Miller] that was marred by incidents of mutual domestic violence. On the evening of August 5, 2013, [Appellant] and Elizabeth were at their residence at 1157 Catherine Street, Apartment 7 in Tire

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). However, a Turner/Finley no-merit letter is the appropriate filing where counsel seeks to withdraw on appeal from the denial of PCRA relief. Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v Finley, 550 A.2d 927 (Pa.Super. 1988) (en banc). Since an Anders brief provides greater protection to a defendant, we may accept an Anders brief in lieu of a Turner/Finley letter. Commonwealth v. Widgins, 29 A.3d 816, 817 n. 2 (Pa.Super. 2011). We do so here.

Hill, with Elizabeth's brother Quinn Miller (Quinn). Around midnight Quinn heard Elizabeth screaming and upon going to the upstairs bedroom he found that [Appellant] had Elizabeth on a bed and was choking her. Quinn intervened at which time [Appellant] threatened both Elizabeth and Quinn with a hammer he picked up from beside the bed. While holding the hammer [Appellant] asked Quinn if he wanted to die. Following this incident Elizabeth and [Appellant] began a series of verbal and physical assaults on one another ending up downstairs. At some point during this altercation [Appellant] obtained a kitchen knife and threatened Elizabeth and Quinn with it again asking Quinn if he wanted to die.

Eventually Elizabeth and Quinn left the apartment and started driving around in her car intending to return to the house Quinn shared with other family members. Elizabeth discovered that she left her cell phone in the apartment and called [Appellant] using Quinn's cell phone several times to arrange to get her phone back. She agree[d] to meet [Appellant] at a car wash in the Moxham section of Johnstown to return her phone. Elizabeth and Quinn arrived at the car wash first around 4:30 a.m. and [Appellant] arrived shortly after in his red Chevrolet [B]lazer and parked in one of the car wash stalls. Elizabeth exited her car and got into the front passenger seat of [Appellant]'s car where she remained for sometime. Elizabeth and [Appellant] eventually began arguing loudly and Quinn exited Elizabeth's car and walk[ed] towards the Blazer to see if his sister was all right.

Quinn observed [Appellant] and Elizabeth arguing and fighting in the vehicle. Elizabeth told Quinn that [Appellant] had a knife and [Appellant] admitted to Quinn that he did. Quinn walked to the passenger side of the Blazer and tried to pull Elizabeth from the vehicle while she was fighting with [Appellant]. While engaged in this effort Quinn saw a large knife in [Appellant's] hand and saw [Appellant] stab Elizabeth in the back. [Appellant] then threw the knife out of the driver's side window. As [Appellant] drove off Elizabeth partially fell and was partially pulled by Quinn out of the Blazer.

. . . .

Police and emergency [personnel] arrived and Elizabeth was transported to Conemaugh Memorial Hospital. Elizabeth suffered massive blood loss due to the knife puncturing her inferior vena

cava. She died as a result of her wounds at the hospital as doctors attempted to stop the bleeding.

. . . .

Efforts to locate [Appellant] continued for ten days and involved both state and federal authorities. [Appellant] eventually turned himself in to Johnstown Police. The knife and other evidence w[ere] recovered from the crime scene with additional evidence being recovered after searches of the Blazer and apartment were conducted after search warrants had been obtained. Elizabeth's cell phone was eventually recovered from the apartment. [Appellant] did not testify but argued, inter alia, that Quinn[,] the only eyewitness, did not see the entire incident that occurred inside the Blazer, that it was Elizabeth who was the initial aggressor with the knife, and that [Appellant] was acting in self-defense when they struggled. [Appellant] argued he had taken the knife from Elizabeth and that the stabbing was accidental and resulted when Elizabeth fell backwards into the Blazer when Quinn was trying to pull her out of the vehicle which resulted in her falling onto the knife and impaling herself. By nature of the verdicts the jury rejected [Appellant's] theory and found Quinn's testimony credible as the only eyewitness to these events.

Trial Court Opinion, 9/11/15, at 4-7.

Appellant was arrested and charged with criminal homicide, aggravated assault, two counts of aggravated assault with a deadly weapon, and recklessly endangering another person. Appellant proceeded to a jury trial and was found guilty of third-degree murder, as well as aggravated assault, aggravated assault with a deadly weapon, and recklessly endangering another person. Appellant was found not guilty of one of the charges of aggravated assault with a deadly weapon. On January 15, 2015, the trial court imposed an aggregate sentence of sixteen to forty years of incarceration.

Appellant filed timely appeal pursuing three issues, which pertained to various evidentiary rulings made by the trial court. We affirmed Appellant's judgment of sentence. Commonwealth v. Gibson, 156 A.3d 349 (Pa.Super. 2016) (unpublished memoandum). On February 15, 2017, our Supreme Court denied Appellant's petition for allowance of appeal. Commonwealth v. Gibson, 166 A.3d 1222 (Pa. 2017). He did not petition for a writ of certiorari to the United States Supreme Court.

On April 30, 2018, Appellant filed a timely[2] pro se PCRA petition, counsel was appointed, and counsel filed a Turner/Finley letter asserting that Appellant's PCRA petition lacked merit and requesting permission to withdraw from the case. The PCRA court issued an order permitting counsel to withdraw and providing Appellant with notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. Appellant did not respond to the notice. On September 5, 2018, the PCRA court appointed a second attorney to conduct a review of Appellant's case in order to make sure that no meritorious issues existed. New counsel conducted his own review and, ultimately, agreed with

_____

[2] To the extent the Commonwealth suggests Appellant's judgment of sentence became final thirty days after February 15, 2017, we disagree. Appellant's judgment of sentence became final on May 16, 2017, ninety days following our Supreme Court's denial of his petition and when the time for Appellant to file a petition for writ of certiorari with the United States Supreme Court expired. See 42 Pa.C.S. § 9543(b)(3); U.S. Sup.Ct.R. 13. Appellant had one year from May 16, 2017, to file his PCRA petition. See 42 Pa.C.S. § 9545(b). Therefore, his petition was timely filed.

- 4 -

prior counsel's Turner/Finley letter that no meritorious issues existed. The PCRA court dismissed Appellant's PCRA petition on December 21, 2018.

A timely pro se notice of appeal followed. Appellant timely filed a pro se concise statement pursuant to Pa.R.A.P. 1925(b) raising three issues. On March 19, 2019, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a), discussing the issues raised by Appellant and concluding that all of Appellant's claims were either waived or meritless. See PCRA Court Opinion, 3/19/19, at 5-11. On May 5, 2019, we remanded the case to the lower court so that it could hold a Grazier hearing.[3] At the conclusion of hearing counsel was appointed to represent Appellant.

In this Court, in lieu of an advocate's brief, counsel filed a petition to withdraw and no-merit letter pursuant to Turner and Finley. Before we consider the merits of the issues raised on appeal, we must first determine whether counsel followed the required procedure, which we have summarized as follows.

> Turner/Finley counsel must review the case zealously. Turner/Finley counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

_____

[3] As it was unclear whether Appellant was proceeding pro se or was represented by second-appointed PCRA counsel, we remanded the case so that a hearing could be convened in order to determine whether Appellant wished to represent himself or continue with appointed counsel for his appeal. See Commonwealth v. Grazier, 713 A.2d 81, 82 (Pa. 1998).

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel.

If counsel fails to satisfy the foregoing technical prerequisites of Turner/Finley, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper Turner/Finley request or an advocate's brief.

However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of Turner/Finley, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

Commonwealth v. Wrecks, 931 A.2d 717, 721 (Pa.Super. 2007) (cleaned up).

We are satisfied from the review of counsel's application and no-merit letter that counsel has substantially complied with the technical requirements of Turner and Finley. Counsel has detailed his review of the case and the issues Appellant wishes to raise, and explained why those issues lack merit with citation to authority where appropriate. Counsel has also sent a copy to Appellant and advised him of his immediate right to proceed pro se or with

hired counsel.[4]  Accordingly, we proceed to consider the substance of the appeal.

We begin with a review of the applicable law.  "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error."  Commonwealth v. Rizvi, 166 A.3d 344, 347 (Pa.Super. 2017).  Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due."  Commonwealth v. Miner, 44 A.3d 684, 688 (Pa.Super. 2012).

In his Turner/Finley letter, counsel addresses the following three issues, which Appellant wished to raise:

   I.     [Whether] the lower court erred when dismissing his PCRA
          petition by failing to provide notice required by Pennsylvania
          Rule of Criminal Procedure 907.

   II.    [Whether Appellant] did not receive a fair trial because he
          did not have a jury of his own race and therefore was subject
          to racial bias.

   III.   [Whether Appellant] was denied a fair trial based on the jury
          possessing prejudicial information prior to trial.

Turner/Finley Letter at 4.  The PCRA court concluded that the first claim was meritless and the other two claims were waived.  The record supports the PCRA court's findings for the reasons that follow.

_____

[4] Appellant did not file a response to Appellant's petition.

First, counsel conducted research into the issue of whether the PCRA court erred when it did not issue a second Pa.R.Crim.P. 907 notice after a second appointed attorney filed a letter agreeing with the conclusions of Appellant's initial PCRA counsel. Turner/Finley Letter at 7. Since the PCRA court did issue proper Rule 907 notice, Appellant failed to respond to it, and the Rule does not require the PCRA court to issue multiple notices, counsel found the issue to be meritless. Id. While the PCRA court's procedure was somewhat unorthodox, Appellant had from August 29, 2018 until December 21, 2018, to file a response to the Rule 907 notice, yet he failed to do so. We discern no error in the PCRA court's conclusion that this allegation was meritless.[5]

Next, counsel reviewed Appellant's allegation that the racial composition of the pool of jurors available for potential selection violated Batson v. Kentucky, 476 U.S. 79 (1986),[6] when it did not include any African American jurors. Counsel and the PCRA court found this issue to be waived, since Appellant did not raise it in his direct appeal. We agree that Appellant's failure to raise this issue sooner results in its waiver here. See 42 Pa.C.S. § 9544(b)

_____

[5] Even if it was PCRA court error, the mistake was harmless as we are still going to consider the claims Appellant wishes to raise. Also, none of Appellant's claims was waived due to his failure to file a response to the Rule 907 notice.

[6] In Batson, the Supreme Court held that purposefully excluding jury members on the basis of their race violated the Equal Protection Clause of the United States Constitution.

(providing for waiver if a petitioner could have raised an issue at an earlier stage in the process, i.e. direct appeal, and failed to do so).

However, even if the issue were not waived, Appellant would not be entitled to relief. In order to establish a Batson violation, Appellant must establish by prima facie evidence that "purposeful discrimination" pervaded the selection process. Batson, supra at 100. Appellant fell far short of this requirement. At pre-trial, hearing Appellant unsuccessfully challenged the racial makeup of the jury selection panel. At the hearing, the district court administrator of Cambria County explained the random jury pool selection process utilized by the State of Pennsylvania that is based on voter registration, driver's license, and income tax return records. N.T. Pre-Trial Motion, 8/25/14, at 5-12. Also, the executive director of the Cambria County Planning Commission testified that, based on 2010 census data, only 3.6% of the population of Cambria County is African American. Id. at 15. Since there was no evidence uncovered of purposeful discrimination in the jury pool selection process and an innocent explanation for the absence of African Americans on the jury panel existed, we discern no abuse of discretion in the PCRA court's finding that Appellant's Batson challenge is devoid of merit. PCRA Court Opinion, 3/19/19, at 8-11.

Finally, PCRA counsel investigated Appellant's challenge that he was denied a fair trial based on the jury possessing knowledge of his case from media coverage prior to trial. Turner/Finley Letter at 8. Again, counsel and

the PCRA court agreed that this issue was waived because it was not raised at trial or on direct appeal. The certified record supports this conclusion.

Further, even if this issue were not waived, we would agree with the PCRA court's alternative finding that the claim was meritless. The PCRA court, which was also the trial court, explained that during jury selection, a few of the jury members were aware of the case as "the stabbing at a car wash" based on media reports, but none expressed a detailed knowledge of the case. PCRA Court Opinion, 3/19/19, at 11. It is well-established that the mere existence of pretrial publicity does not create a presumption of prejudice and that jurors are not required to be totally ignorant of the facts of a case. See Commonwealth v. Counterman, 719 A.2d 284, 293 (Pa. 1998); Commonwealth v. Chambers, 685 A.2d 96, 103 (Pa. 1996). Since there is no evidence that any pretrial publicity was inherently prejudicial to Appellant, Appellant has failed to prove that the PCRA court erred when it found his issue to be meritless.

As we agree with counsel that the claims Appellant wishes to raise are without merit, we permit counsel to withdraw and deny relief. The petition of Gary F. Vito, Esquire, for leave to withdraw is granted.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/7/2020</u>