J-S17013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDA L. KERSTETTER | : | |
| | : | |
| Appellant | : | No. 1367 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 12, 2019
In the Court of Common Pleas of Snyder County
Criminal Division at No(s): CP-55-CR-0000342-2018

BEFORE: PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.: **FILED: APRIL 27, 2020**

Appellant, Brenda Kerstetter, appeals from her judgment of sentence entered by the Court of Common Pleas of Snyder County for endangering the welfare of children and harassment. We affirm.

Appellant has a commercial driver's license and, for several years, drove a school bus to bring children to a vacation bible school at Kreamer Bible Baptist Church in Snyder County. On June 15, 2018, Appellant was transporting a busload of children to the bible school. Those children included Appellant's daughter, Alisha Kerstetter, as well as 14-year-old Jenay Aikey and Jenay's boyfriend, 16-year-old Jonathan Schlief. Appellant was also driving children from a daycare and their two adult chaperones to the bible school.

During the bus ride, Alisha admonished Jenay for holding hands with Jonathan as that was against the rules of the bible school. This quickly escalated into an altercation, with Jenay grabbing Alisha by the hair. One of the chaperones from the daycare alerted Appellant to the fact that there was an incident occurring towards the rear of the bus.

Appellant stopped the bus alongside a back country road. She walked to the back of the bus, grabbed Jenay by the hair and pulled her into the aisle of the bus. Jenay, in turn, grabbed Appellant's hair and began yelling and cursing. Appellant pulled Jenay by the hair to the front of the bus, removed her from the bus and closed the bus's doors. Appellant did not ask either of the daycare chaperones for assistance, nor did they intervene. However, Jonathan asked to leave the bus so that Jenay would not be left alone. Appellant complied, but before letting Jonathan off the bus, Appellant told him that he should stay away from girls like Jenay.

Appellant drove away, leaving Jenay and Jonathan on the side of the road. Although Jonathan had a cell phone, he testified that he did not have good service where Appellant had left them. Both Jenay and Jonathan testified that they did not know where they were, but began walking to try "to find a road [they] knew to go home." N.T. Trial, 2/26/19, at 65.[1]

_____

[1] The area where Appellant left Jenay and Jonathan was described as "a village" with some houses. N.T. Trial, 2/26/19, at 36. Appellant described it in her statement to the police as "in the middle of nowhere." *Id.* at 30.

Appellant did not call anyone at that time. Rather, Appellant transported the rest of the children and the two adult chaperones to the bible school at the church. She then retrieved some more children from a different daycare and returned to the church. Once there, Appellant called Jenay's mother, Kelly Aikey, to inform her about what had transpired on the bus. Ms. Aikey testified that Appellant would not tell her the location of her daughter, so she hung up on Appellant. Before hanging up, however, Ms. Aikey asked if Jonathan was with her daughter and Appellant responded that he was.

Eventually, Ms. Aikey was able to reach Jonathan on his phone. She testified that "[Jonathan] had no idea where he was, neither did Jenay, neither did I" but "after about 25 minutes I finally found them." **See id.** at 41. At that point, Jenay and Jonathan were almost two and one-half miles from the spot where Appellant had left them. **See id.** at 25. Ms. Aikey and Jenay reported the incident to police.

Appellant was charged with endangering the welfare of children, recklessly endangering another person, disorderly conduct and the summary offense of harassment. Following a trial on February 26, 2019, a jury found Appellant guilty of endangering the welfare of children. The trial court found Appellant guilty of harassment. On June 12, 2019, Appellant was sentenced to one year of probation for the endangerment of children conviction and 90 days of probation for the harassment conviction. Appellant filed a post-

sentence motion, which the trial court denied on August 13, 2019. This timely appeal followed.[2]

Appellant first argues that the evidence was insufficient to support her conviction for endangering the welfare of children. This claim fails.

"Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v. Blakeney***, 946 A.2d 645, 651 (Pa. 2008) (citation omitted). The Commonwealth may sustain its burden entirely by circumstantial evidence and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. ***See Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

The offense of endangering the welfare of children is defined by 18 Pa.C.S.A. § 4304 (a)(1), which provides:

> A parent, guardian or other person supervising the
> welfare of a child under 18 years of age, or a person
> that employs or supervises such a person, commits an

---

[2] Appellant's notice of appeal stated that she is appealing from the "verdict of the trial held on February 26, 2019, and specifically from its finding of guilt for Count 1, Endangering the Welfare of Children." Notice of Appeal, 8/19/19, at 1. We remind counsel that in criminal cases, "appeals lie from judgment of sentence rather than from the verdict of guilt." ***Commonwealth v. O'Neil***, 578 A.2d 1334, 1335 (Pa. Super. 1990). However, because the trial court entered a judgment of sentence for the endangering the welfare of children count, which Appellant noted in her notice of appeal, we see no procedural impediment to reaching the issues raised by Appellant in this timely appeal.

offense if he knowingly endangers the welfare of the
child by violating a duty of care, protection or support.

*Id*. Therefore, to sustain a conviction under Section 4304(a)(1), the Commonwealth must prove that a defendant: (1) was supervising the welfare of a child under the age of 18; (2) knowingly endangered the welfare of the child; and (3) violated a duty of care to the child. ***See id***. In determining the Commonwealth had presented sufficient evidence to do so here, the trial court stated:

> The Commonwealth presented sufficient evidence that [Appellant] was a person supervising the welfare of children under the age of eighteen in her capacity as the bus driver for the vacation bible school. Likewise, the jury received sufficient evidence that [Appellant] endangered the welfare of [Jenay] Aikey when she removed [her] from the bus and allowed [Johnathan Schlief] to leave the bus on a country road several miles from home or the bible school, without notifying anyone, including officials at the bible school, parents or authorities.
>
> The jury also received sufficient evidence and the reasonable inferences derived from that evidence to find [Appellant] acted knowingly. [Appellant] drove the vacation bible school bus. She had a history as a school bus driver. From this evidence the jury could find that she was aware of her duty towards the children on the bus. The actions she took in throwing [Jenay] Aikey off the bus on a country road and not notifying anyone about her actions could not be reasonably expected to protect the child's welfare.

Trial Court Opinion, 8/13/19, at 4.

Appellant now argues that the trial court improperly found that the Commonwealth had proven the intent element of the offense because she did

not knowingly endanger the welfare of Jenay or Jonathan. This Court has stated that in order to show that a person knowingly endangered the welfare of a child, the Commonwealth must establish that the person: (1) was aware of her duty to protect the child; (2) was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) failed to act or took actions so meager that they could not reasonably have been expected to protect the child's welfare. **See Commonwealth v. Smith**, 956 A.2d 1029, 1038 (Pa. Super. 2008).

Appellant first claims that the Commonwealth did not meet this standard here because her actions did not cause Jenay or Jonathan any physical or psychological harm. This argument, however, ignores the fact that in order to establish that Appellant knowingly endangered the welfare of Jenay and Jonathan, the Commonwealth needed to show only that Appellant was aware that she placed Jenay and Jonathan in circumstances that *could have* threatened their physical or psychological welfare. Contrary to Appellant's argument, it is clear the jury could have reasonably inferred that Appellant was aware that abandoning Jenay and Jonathan on the side of the road, in the "middle of nowhere" and miles from home, could have threatened their physical or psychological welfare.

Appellant also argues that there was insufficient evidence to convict her of endangering the welfare of Jenay and Jonathan because she was simply trying to protect her daughter and the other children on the bus and merely

made a "mistake in judgment" in trying to accomplish that by removing Jenay from the bus. Appellant's Brief at 20. In making this argument, Appellant relies on **Commonwealth v. Pahel,** 689 A.2d 963 (Pa. Super. 1997), and in particular, the following language from that decision:

> Utilizing a common sense of community approach to interpret the specific intent element of the statute, we find implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or failure to act.

*Id*. at 965 (Pa. Super. 1997) (citation omitted).

Appellant's reliance on **Pahel** is misplaced. In **Pahel**, a child had swelling around his nose and discoloration under both eyes. The mother waited three days before seeking medical attention and was consequently charged with, and subsequently convicted of, endangering the welfare of her child. In reversing that conviction, this Court found that there was not sufficient evidence to show the mother knew the delay in seeking medical attention for her child created a risk, with an awareness of the potential consequences, to the child's welfare. **Pahel**, 689 A.2d at 967.

The circumstances here differ significantly from those in **Pahel**. Appellant removed one child from her bus and allowed another child to exit that bus and then purposefully drove away from them, leaving them on the side of an unfamiliar country road. She now claims she did so as a means of

protecting her daughter and the other children on the bus. However, if Appellant was truly concerned for the safety of the other children on the bus, there were other courses of action she could have taken. She could have asked the other two adults on the bus for help or she could have promptly called the police, the pastor at the vacation bible school or the parents of Jenay or Jonathan.

Appellant did none of those things. Instead, she left Jenay and Jonathan at an undesignated stop on a back road and then drove away without calling anyone to let them know where the children were. Utilizing a common sense of the community approach, we find that it was certainly reasonable for the jury to have inferred that Appellant knew these actions created a risk to the welfare of Jonathan and Jenay.

To be clear, we do not in any way condone Jenay's behavior. We have great empathy for people charged with supervising the welfare of children - whether it be parents/guardians, teachers or bus drivers - who are confronted with situations involving children acting in an unruly manner. However, it is the duty of the supervisory figure to respond to those situations in a way that does not place the children in their care at risk of harm. A jury could reasonably find that abandoning two children on the side of a country road without notifying anyone of their whereabouts a violation of that duty. As such, we agree with the trial court that there was sufficient evidence to sustain

the jury's finding that Appellant was guilty of endangering the welfare of Jenay and Jonathan.

Next, echoing the arguments she made above, Appellant asserts that her conviction for endangering the welfare of children was against the weight of the evidence. This claim also fails.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part or none of the evidence and to determine the credibility of witnesses." **Commonwealth v. Small**, 741 A.2d 666, 672 (Pa. 1999) (citation omitted). When considering a claim that the verdict is against the weight of the evidence, a "trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Chamberlain**, 30 A.3d 381, 396 (Pa. 2011) (citation omitted).

Appellate review of a weight claim is *not* a reevaluation of the underlying question of whether the verdict is against the weight of the evidence. **See Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003). Rather, our standard of review is limited to determining whether the trial court palpably abused its discretion in concluding that the verdict was or was not against the weight of the evidence. **See id**. We will find an abuse of discretion only if the trial court misapplied the law, reached a manifestly unreasonable judgment or based its decision on partiality, prejudice, bias or ill-will. **See Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013).

In finding that Appellant's verdict was not against the weight of the evidence, the trial court pointed to the Commonwealth's evidence that it had referenced in rejecting Appellant's sufficiency claim. Based on that evidence, including Appellant's actions in "throwing [Jenay] off the bus on a country road and not notifying anyone about her actions," the trial court concluded that the verdict in no way shocked its sense of justice. Trial Court Opinion, 8/13/19, at 4.

Appellant does not argue, much less establish, how the trial court abused its discretion in reaching this conclusion. Instead, Appellant merely recycles her underlying argument that the verdict, contrary to what the trial court found, was in fact against the weight of the evidence. Such an argument misconstrues our limited standard of review of a trial court's decision that the verdict was not against the weight of the evidence. **See Champney**, 832 A.2d at 408. We look only to see if the trial court abused its discretion, and if we find that it did not, as in the instant case, the trial court's decision must stand. **See id**. This claim warrants no relief.

Appellant asserts in her final claim that the trial court abused its discretion by not allowing defense counsel to recall "certain witnesses" to the stand for further cross-examination during her case-in-chief. Appellant's Brief at 23. This claim also fails.

In the first instance, Appellant's very sparse argument regarding this claim fails to identify exactly which witnesses she now asserts the trial court

should have allowed her to recall. This Court has repeatedly reminded appellants that it is not our "duty to comb through the record seeking the factual underpinnings of [their] claim." ***Commonwealth v. Samuel,*** 102 A.3d 1001, 1005 (Pa. Super. 2014). Appellant also does not attempt to explain to this Court why she wished to recall the unidentified witnesses. Given Appellant's complete failure to develop her claim in any meaningful way, we have no reservation in finding that Appellant has waived her claim. ***See Commonwealth v. Love***, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that claims that are not sufficiently developed are waived).

Even if not waived, we would find the claim to be without merit. In its opinion, the trial court identified the witnesses defense counsel wished to recall as Jenay and Ms. Aikey. Counsel wanted to recall them after the Commonwealth had rested its case and after the defense had presented its case in order to ask Jenay and Ms. Aikey about allegedly inconsistent prior statements they had made to the investigating police officer. The Commonwealth objected. In sustaining the objection, the trial court noted that defense counsel had ample opportunity to ask Jenay and Ms. Aikey about any prior inconsistent statements while cross-examining them during the Commonwealth's case-in-chief.

In her brief to this Court, Appellant does not suggest that defense counsel was prevented in any way from asking Jenay and Ms. Aikey - or any other witness for that matter - about statements they had previously made to

the police during his cross-examination of them. Instead, Appellant asserts, without further explanation, that "the trial court initially told counsel he would allow the witnesses to be recalled … [and counsel] relied on this ruling and it was an abuse of discretion for the trial court to reverse its earlier ruling." Appellant's Brief at 24.

As the Commonwealth points out, however, the trial court consistently ruled that it was not going to allow defense counsel to recall any witnesses to ask them about prior statements to the police. The record reflects that it was the court's position all along that defense counsel had the opportunity to ask those questions during his cross-examination of those witnesses and the court was not going to grant counsel a second chance to do what he could have done at that time. **See** N.T. Trial, 2/26/19, at 182 (telling defense counsel that "if you wish to recall them for further cross examination, I'll permit you to do that. If you're going to cross[-] examine them on their prior statements, you should have done that in your cross before."); **see id**. at 195-99 (denying defense counsel's attempt to recall witnesses to question them about prior statements made to the investigating officer because counsel had the opportunity to do that during cross-examination).

Therefore, even if Appellant's claim was not waived, we would find it was without merit. Appellant has simply not shown that the trial court abused its discretion by not allowing defense counsel to recall witnesses to ask them questions he had the opportunity to ask when cross-examining them during

the Commonwealth's case-in-chief. *See Commonwealth v. Chambers*, 685 A.2d 96, 109 (Pa. 1996) (stating that the decision of whether to permit a party to recall witnesses and present additional evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion). No relief is due.

Judgment of Sentence Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/27/2020