J-S20044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
   :
   :
v.                :
   :
   :
   :
ROBERT SITLER           :
   :
Appellant       :    No. 2946 EDA 2022

Appeal from the PCRA Order Entered October 19, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000389-2013

BEFORE:    DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:              **FILED APRIL 11, 2024**

Appellant, Robert Sitler, appeals from the order of the Court of Common

Pleas of Montgomery County that dismissed his petition filed pursuant to the

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.* A jury found

him guilty of homicide by vehicle,[1] and the trial court, sitting without a jury,

found him guilty of summary offenses under the Vehicle Code.[2] Appellant

challenges the denial of two ineffective assistance of counsel claims and the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3732(a).

[2] The court found him guilty of violating the following statutes: reckless driving, 75 Pa.C.S. § 3736(a); following too closely, 75 Pa.C.S. § 3310(a); driving vehicle at safe speed, 75 Pa.C.S. § 3361; maximum speed limits, 75 Pa.C.S. § 3362(a)(1); driving on roadways laned for traffic, 75 Pa.C.S. § 3309(1); and overtaking vehicle on the left, 75 Pa.C.S. § 3303(a)(1).

denial of his request for an evidentiary hearing before the PCRA court. Upon

review, we affirm.

## I. BACKGROUND

On direct review, we set forth the following summary of the facts and

procedural history in this matter:

> On November 12, 2012, just before 9 p.m., [Appellant] was driving his truck along a two-lane road with a center turning lane. His girlfriend, Denise Dinnocenti, and her children were passengers in the truck. [Appellant] was driving Dinnocenti to a dance rehearsal, which started at 9 p.m.
>
> Regina Qawasmy was driving in front of [Appellant], who was following very closely behind her, approximately two or three feet. In an effort to make [Appellant] follow less closely, she applied her brakes at least five to seven times. As she prepared to turn right, she noticed a young man, later identified as [16-year-old] Timothy[ Paciello], standing in the center lane waiting to cross the street. Prior to turning, Qawasmy began to decrease her speed. Suddenly, Qawasmy heard the revving of an engine and then saw a flash, which she later learned was [Paciello] flying into the air.
>
> According to Dinnocenti, [Appellant], while driving behind Qawasmy, became frustrated because she was taking too long to turn. He sped around Qawasmy on the left and into the center lane, going 50 miles per hour ("mph") in a 35[-]mph zone. [Appellant] did not see [Paciello] in the lane and as a result, struck him with his truck, causing [Paciello] to fly into the air and then slide down the street.
>
> After striking [Paciello], [Appellant] pulled into a nearby parking lot. He handed his keys over to Dinnocenti and instructed her and her children to tell the police that she was driving. When police arrived, Dinnocenti did as [Appellant] had said and told them that she was driving. At the scene and in a later written statement, [Appellant] likewise claimed that Dinnocenti was driving. The police later recovered surveillance footage from the Sunoco gas station across the street from the accident. The

footage showed [Paciello] walking into the center lane and then out of sight of the video. A few moments later, [Appellant]'s truck is seen speeding down the center lane. Officer Matthew Meitzler, who was one of the officers that arrived on scene, informed Dinnocenti that there was footage of the accident. Eventually, both Dinnocenti and [Appellant] admitted that he was driving the vehicle.

This was not the first time [Appellant] caused a death while driving. In Alabama in 2004, he caused the death of Mary Francis Stewart. While driving in heavy fog, [Appellant] drove closely to the vehicle in front of him. In an effort to get around the vehicle, he sped into the lane for opposing traffic and crashed into an oncoming vehicle, killing the driver, Ms. Stewart. [Appellant] pled guilty to manslaughter for causing the death of Ms. Stewart while operating a motor vehicle.

[Appellant] moved *in limine* to preclude the evidence of the Alabama conviction. The trial court concluded that the evidence was highly prejudicial and granted the motion. The Commonwealth filed a Notice of Appeal to this Court, arguing among other issues, that the trial court erred in granting the Motion *in Limine*. This Court, sitting *en banc*, agreed and reversed the ruling. *See Commonwealth v. Sitler*, 144 A.3d 156, 165 (Pa. Super. 2016) (*en banc*).

The case then proceeded to a three-day trial, after which [Appellant] was convicted of the above-referenced crimes. He was sentenced to an aggregate term of eight and one-half to [seventeen] years' incarceration. [Appellant] filed a post-sentence motion which the trial court denied.

*Commonwealth v. Sitler*, 2018 WL 4041664, *1-2 (Pa. Super., filed Aug. 24, 2018) (record citations omitted; case citation formatted). In addition, we note that on the first day of trial, Appellant entered an open guilty plea to insurance fraud, conspiracy to commit insurance fraud, false reports to law enforcement, conspiracy to commit false reports to law enforcement, unsworn falsifications to authorities, conspiracy to commit unsworn falsifications to

authorities, corruption of minors, conspiracy to commit corruption of minors, obstructing the administration of law, and conspiracy to commit obstruction of the administration of law. N.T. 2/6/17 (Open Guilty Plea), 3-4, 12-14.[3]

Appellant appealed, challenging the admission of his prior manslaughter conviction and the sufficiency of the evidence. *Sitler*, 2018 WL 4041664, at *2-4. This Court affirmed the judgments of sentence, and our Supreme Court denied a petition for allowance of appeal. *Commonwealth v. Sitler*, 195 A.3d 1024 (Pa. Super. 2018) (table) (1989 EDA 2017), *allocatur denied*, 203 A.3d 200 (Pa. 2019) (table) (604 MAL 2018).

Appellant timely filed *pro se* his instant PCRA petition. Counsel was appointed and filed an amended petition. Amended PCRA Petition, 3/1/22. Counsel adopted claims from the *pro se* petition alleging that trial counsel provided ineffective assistance by, *inter alia*, not objecting to a jury instruction concerning the admission of his prior vehicular manslaughter conviction from Alabama and not requesting funds for presenting an accident reconstruction expert to rebut the Commonwealth's expert testimony. Amended PCRA Petition, 3/1/22, § 7(a)-(b); *Pro Se* PCRA Petition, 2/13/20, 12-17, 21-24; Appointment Order, 2/20/20, 1. In the counseled petition, Appellant requested an evidentiary hearing at which he proposed that he would present testimony from himself, trial counsel, and an accident reconstruction expert

---

[3] 18 Pa.C.S. §§ 4117(a)(2), 903(a)(1)/4117(a)(2), 4906(b)(1), 903(a)(1)/4906(b)(1), 4904(a)(1), 903(a)(1)/4904(a)(1), 6301(a)(1)(i), 903(a)(1)/6301(a)(1)(i), 5101, and 903(a)(1)/5101, respectively.

identified as Kevin O'Connor. Amended PCRA Petition, 3/1/22, ¶¶ 11-12. PCRA counsel certified the proposed testimony for a hearing, noting that Appellant would call the expert to testify "if [he was] financially able to do so." *Id.* at 13-15.

The Commonwealth filed a response requesting the dismissal of the petition. Commonwealth Answer and Motion to Dismiss, 6/21/22. The PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Rule 907 Notice, 8/16/22. The court informed Appellant that it was denying his request for a hearing because he failed to provide certificates signed by his proposed witnesses and the certificate signed by his counsel did not substantially comply with 42 Pa.C.S. § 9545(d)(1). *Id.* at ¶ 13. The court notified Appellant that his claim about the jury instruction lacked arguable merit. *Id.* at ¶ 15. The court determined that it offered two separate instructions about that evidence, it disagreed with Appellant's interpretation of the first instruction, and ruled that the combination of the instructions properly informed the jury that it could not consider the prior conviction as evidence showing criminal propensity.[4] *Id.* at ¶¶ 15-19. The court also informed Appellant that his claim concerning the failure to request funds for an expert witness failed under all three prongs of the ineffective assistance of counsel standard where the evidence presented at a pretrial hearing on a motion for expert funds supported the conclusion that Appellant

---

[4] The same jurist presided in this case at trial and on collateral review.

was not indigent. *Id.* at ¶¶ 20-25 & nn. 2-3. The court found that that the claim was only developed "in the abstract" and that there was no reasonable probability that rebuttal testimony from an expert witness would have changed the result of his trial. *Id.* at ¶¶ 24-25.

After Appellant filed a counseled response, addressing the adequacy of his request for an evidentiary hearing and the proposed merit of his ineffectiveness claim concerning the jury instructions, the court dismissed the petition. Response to Rule 907 Notice, 10/14/22, ¶¶ 6-20; Dismissal Order, 10/19/22, 1. Appellant timely appeals. Notice of Appeal, 11/17/22, 1.

## II. ISSUES

Appellant presents the following questions for our review:

I. Did the lower court err in its determination, without a hearing, that trial counsel provided to Appellant effective assistance of counsel when trial counsel failed to object to the trial court's improper cautionary instruction which advised the jury that it could consider Appellant's prior conviction as evidence of his [propensity] to commit crimes[?]

II. Did the lower court err in its determination, without a hearing, that trial counsel provided to Appellant effective assistance of counsel where trial counsel failed to petition the court for expert witness fees to retain the services of an accident reconstruction expert, where Appellant had become indigent and was unable to afford such expert to properly defend himself at trial[?]

III. Did the lower court err in denying Appellant an evidentiary hearing pursuant to the Post Conviction Relief Act inasmuch as Appellant had issues [of] meritorious of review that could only be properly considered following an evidentiary hearing[?]

Appellant's Brief at v (questions renumbered for ease of review; answers of the lower court omitted; original in all caps).

## III.  ANALYSIS

Our standard of review of an order dismissing a PCRA petition is well-settled:

> [W]e must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error.  The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party.  The PCRA court's credibility determinations, when supported by the record are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions.  We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief.  Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

## A.

Appellant claims that that the lower court erred by denying relief on his claim that his trial counsel provided ineffective assistance by not objecting to the jury instruction offered by the lower court prior to admission of his prior manslaughter conviction.  Appellant's Brief at 21-24.  He argues that the PCRA court ignores the plain wording of its former instruction, and that the instruction should be read as improperly recommending that the jury could conclude that he had a criminal propensity from which they could be inclined to infer his guilt.  *Id.* at 21-22.

The first two issues in this appeal review the effectiveness of Appellant's trial counsel. In addressing effectiveness claims:

[W]e begin, as we must, with the presumption that counsel acted effectively. To prove otherwise, a petitioner must satisfy the performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), by a preponderance of the evidence. This Court has applied the *Strickland* test by requiring a petitioner to establish three elements: (1) the underlying claim has arguable merit; (2) no reasonable basis for counsel's action or failure to act; and (3) the petitioner suffered prejudice because of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different absent the error.

…

If a petitioner's claim fails under any required element of the *Strickland* test, the claim may be dismissed on that basis. A court is not required to analyze the elements of an ineffectiveness claim in any order of priority; if a claim fails under any necessary element, the court may proceed to that element first.

*Commonwealth v. Johnson*, 289 A.3d 959, 979-80 (Pa. 2023) (quotation marks and most citations omitted).

Here, the trial court instructed the jury, prior to the admission of the prior manslaughter conviction, as follows:

Ladies and gentlemen, I am going to direct you that the evidence about the prior incident -- the Alabama incident is not to be regarded as evidence shown that the person is a bad person or has bad character but has criminal tendency for which you may be inclined to infer guilt. It will be relevant as the Commonwealth will make out its case to show only knowledge of recklessness and not to show bad character.

N.T., Trial, 2/7/17, 8-9. The related Pennsylvania suggested jury instruction for the admission of evidence of other offenses as substantive proof of guilt provides:

> This evidence is before you for a limited purpose, that is, for the purpose of tending to [show *[give specifics]*] [contradict *[give specifics]*] [rebut *[give specifics]*] *[give specifics]*. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

Pa. SSJI (Crim), § 3.08(2).

Appellant argues that, by using the phrase "but has criminal tendency for which you may be inclined to infer guilty" in the instruction, the trial court "changed the entire directive to the jury as to what the jury could consider." Appellant's Brief at 21. As a result, he asserts that his trial counsel provided ineffective assistance by not objecting to the instruction as an incorrect statement of the law. *Id.* at 22.

The PCRA court notes that its instruction "differ[ed] only slightly from" the standard suggested criminal jury instruction by replacing the word "or" from the suggested instruction with "but has" before the phrase criminal tendencies. PCRA Court Opinion, 1/17/23, 8. Despite this alteration, the court alleges that the instruction as stated to the jury was proper because it "clearly instruct[ed] the jury … to not use the prior conviction as evidence of bad character." *Id.* The court advises that Appellant's ineffectiveness claim was meritless because a "reviewing court must consider the entire charge, not

merely isolated fragments." ***Id. citing Commonwealth v. Chambers***, 685 A.2d 96, 102 (Pa. 1996).

Assuming "even if any juror was potentially confused over the cautionary instruction at issue," the PCRA court directs our attention to this second relevant cautionary instruction that was given before the jury began deliberations:

> Now, in this case, and you have heard the Commonwealth at least mention this, you have heard evidence tending to prove that the defendant was guilty of vehicular manslaughter for which he is not on trial. I am speaking of the testimony to the effect that Sergeant Carl Radcliff testified to the fact of a vehicular manslaughter conviction in Alabama in 2006.
>
> This evidence is before you for a limited purpose; that is, for the purpose of tending to show that the defendant had knowledge of recklessness of his conduct, that he consciously disregarded it, and that the defendant knew his driving behavior created a substantial risk of death.
>
> This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

PCRA Court Opinion, 1/17/23, 9, ***quoting*** N.T. 2/8/17, 370-71 (removing emphasis included in the court's reproduction of the quote; including paragraph breaks present in the notes of testimony). The court reasons that by reading both instructions, "it is clear that the [trial c]ourt informed the jury not to consider [Appellant's] prior conviction as showing criminal tendency." PCRA Court Opinion, 1/17/23, 9-10. Appellant discourages us from

considering the importance of this second instruction because "the damage was done" with the first instruction and "[n]o accurate jury instruction at the end of the case could cure such a taint." Appellant's Brief at 23.

Upon reading the initial instruction in its full context, we agree with the PCRA court that there was no arguable merit to Appellant's ineffective claim. Appellant's theory for a misstatement of law is based only by reading the phrase "has criminal tendency for which you may be inclined to infer guilt" out of context from the remainder of the sentence in which it is used. The remainder explicitly told the jury that the prior conviction from Alabama was not to be used to show two things about Appellant: (1) that he was "a bad person;" or (2) that he "ha[d] bad character but ha[d] criminal tendency for which [the jury] may [have been] inclined to infer guilt." N.T., Trial, 2/7/17, 8-9.

The second thing the jury was told to not extrapolate from the prior conviction was that Appellant had both "bad character" and a "criminal tendency," which in these contexts could be read as referring to the same personal defect or that the "tendency" aspect was a derivative characteristic of "bad character." In either interpretation, the inclusion of "but has" before "criminal tendency" in the first sentence of the initial instruction merely compounded the number of things the court properly told the jury to disregard. The court thereafter explicitly told the jury of the "relevant" purpose of the evidence concerning the prior conviction, "to show only knowledge of recklessness," while reiterating that the evidence was "not to

show bad character." When read as a whole, the instruction did not, as Appellant suggests, show that the jury was told to disregard the evidence of the prior conviction as "bad character" but simultaneously consider it as proof of a "criminal tendency." Because the instruction did not suggest an improper use of the prior conviction, we ascertain no error in the PCRA court's finding that Appellant's ineffectiveness claim lacked arguable merit.

Even if the first instruction had awkward syntax, we would consider the second instruction relevant for reviewing the prejudice prong of the ineffectiveness standard and agree with the PCRA court that the second instruction cured any confusion caused by the first instruction. While Appellant suggests that the second instruction could not have had any curative effect, he cites no caselaw to support that proposition. Appellant's Brief at 23. We find that his bald assertion to that effect is incorrect. **See, e.g., Commonwealth v. Small**, 980 A.2d 549, 568 (Pa. 2009) (holding that Small's trial counsel was not ineffective in connection with a "prior bad acts" instruction where counsel informed the trial court of the possible confusion in its original instruction, and was able to get the court to issue a very clear, limiting instruction benefiting Small).

**B.**

Appellant also alleges that trial counsel was ineffective for failing to request funds from the trial court to retain a witness to rebut the testimony of the Commonwealth's expert witness on accident reconstruction. Appellant's Brief at 24-29. He asserts that trial counsel consulted with an accident

reconstruction expert, but Appellant "r[a]n out of funds" by the time of trial and was unable to afford the services of the rebuttal witness. *Id.* at 24. He acknowledges that his counsel had unsuccessfully sought funding to hire a private investigator and a toxicologist in 2013, but he faults counsel in his claim for not seeking funds for an accident reconstruction expert in late 2016 and early 2017, leading up to his trial.[5] *Id.* at 24-25.

The PCRA court informs us that it denied the instant claim based on a failure to sustain all three prongs of the ineffectiveness standard. PCRA Court Opinion, 1/17/23, 10. As for arguable merit, the court reasoned that, based on the evidence presented with respect to the 2013 funding request motion – i.e., Appellant paid in full a $10,000 retainer fee for his attorney, he had spent over $1,900 on prison calls, and he owned a property in Florida with his ex-wife – Appellant was not indigent and thus a subsequent request for expert fees would have been meritless. *Id.* at 10-11. With respect to the reasonable basis prong, the court asserts that trial counsel had a reasonable basis for forgoing a subsequent request for expert funds after the 2013 request was denied. *Id.* at 11. Lastly, the court notes two reasons for denial of the claim for lack of prejudice. *Id.* at 11-12. First, it asserts that it did not find a reasonable probability that the outcome of the proceedings would have been different had the second motion for expert funds been filed. *Id.* at 11.

_____

[5] We note that that a different jurist from the one who had sat as the trial court and the PCRA court denied the 2013 request. *See* Order Denying Motion for Appointment of Expert, 9/26/13, 1.

Second, it finds that Appellant failed to properly plead and offer to prove his claim. *Id.* at 11-12.

Concerning the lack of claim development discussion, the PCRA court notes that, in his amended PCRA petition, Appellant identified a proposed accident reconstruction expert and stated that the expert would testify at a PCRA hearing and would have appeared at trial if he had been paid an "appropriate fee." PCRA Court Opinion, 1/17/23, 12, *citing* Amended PCRA Petition, 3/1/22, 5. The court referred to this ineffectiveness claim as one "in the abstract" and noted that Appellant failed to establish that the witness was available and willing to testify at the time of trial and failed to set forth the substance of the proposed testimony from the proposed witness. PCRA Court Opinion, 1/17/23, 12.

Appellant challenges the PCRA court's arguable merit reasoning by noting that the 2013 ruling on his initial expert funds motions was not dispositive of his financial status for a later request prior to trial and that "there is no evidence in the record as to what [his] financial situation was three years later in the fall of 2016." Appellant's Brief at 25. As for the court's discussion of the development of his claim, he asserts that his "pleadings allege[d that] the witness was available, was willing to testify, but that payment was the issue." *Id.* at 27. He reasons that his claim had merit because he "would have testified to his indigency in 2017" and "[t]rial counsel would have testified that he never filed a motion seeking funds" for his proposed accident reconstruction expert's appearance. *Id.* Concerning the

PCRA court's lack of prejudice finding, Appellant argues that the Commonwealth's expert witness lacked expertise in accident reconstruction techniques and that his proposed witness would have "had an engineering background and specific training, education, and experience in accident[ ] reconstruction principles." *Id.* at 28-29. Accordingly, he asserts, "[t]o boldly say that the far superior defense expert would not have changed the outcome of the proceedings is nothing more than pure speculation on the part of the [PCRA] court." *Id.* at 29.

Relevant to this claim, this Court has held:

In order to demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that the witness [ ] existed, the witness [was] ready and willing to testify, and the absence of the witness ['] testimony prejudiced petitioner and denied him a fair trial. In particular, when challenging trial counsel's failure to produce expert testimony, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence.

*Commonwealth v. Luster*, 71 A.3d 1029, 1047 (Pa. Super. 2013) (*en banc*) (quotation marks, quotation, and citations omitted).

Additionally,

To establish ineffective assistance of counsel for the failure to present an expert witness, appellant must present facts establishing that counsel knew or should have known of the particular witness. Moreover, trial counsel need not introduce expert testimony on a client's behalf if counsel is able to effectively cross-examine prosecution witnesses and elicit helpful testimony.

***Commonwealth v. K.M.***, 680 A.2d 1168, 1172 (Pa. 1996) (citations omitted). "The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert was available who would have offered testimony designed to advance appellant's cause." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1143 (Pa. 2011).

Upon reviewing the PCRA court's stated reasons for denying the claim, we are unable to join in the court's analysis as to the arguable merit and reasonable basis prongs of the ineffectiveness standard. It does not automatically follow that because Appellant was not indigent at the time of his 2013 request for expert witness funds that also he must not have been indigent near the time of his trial that occurred years later. This is especially true in the instant case where Appellant had increased litigation costs caused by the Commonwealth's appeal of the grant of his pre-trial motions *in limine*. Moreover, the sentencing notes of testimony reveal that Appellant remained in custody in this case and other criminal matters in the period following the denial of the August 2013 request for funds. N.T. 5/25/17, 5-6. (noting that Appellant received a credit for pre-trial detention in this case from December 10, 2012 through October 20, 2013, and then began serving time in other matters).

Appellant notes "there is no evidence in the record as to what [his] financial situation was three years later in the fall of 2016," but that assertion points to his own failure to proffer evidence in support of his supposed indigency in the course of the pre-trial litigation of this case. Appellant's Brief

at 25. Even without a hearing, Appellant could have proffered to the PCRA court bank records, financial documents, or invoices for legal services in the relevant period to support his theory that he was a suitable candidate for indigent aid. Any pleading failure in those respects, however, is immaterial where the PCRA court failed to even consider the possibility that Appellant was indigent near the time of trial based on the prior denial of his request for funds to retain an expert witness.

In any event, we conclude that the PCRA court properly denied Appellant's claim for lack of prejudice because Appellant failed to demonstrate a reasonable probability that a request for funds to retain an accident reconstruction expert as a rebuttal witness would have changed the result of his trial. In his amended PCRA petition, Appellant failed to proffer sufficient evidence that would permit a prejudice finding in his favor. Mostly notably, he failed to provide the PCRA court with any suggestion of how the proposed testimony from an expert witness would have successfully rebutted the Commonwealth's case-in-chief. At most, he alleged that, "if financially able to do so, [he would have] call[ed] Kevin O'Connor to testify that had he been asked to appear as an expert witness at trial he would have done so with the payment of the appropriate fee, and would have provided testimony on defendant's behalf to rebut the prosecution's accident reconstruction expert witness." Amended PCRA Petition, 3/1/22, § 12. That proffer may have been sufficient for proving that trial counsel's failure to request indigent funding deprived him of a rebuttal witness, but it did nothing to advance Appellant's

burden to demonstrate that he was prejudiced by trial counsel's failure to pursue funds for an expert rebuttal witness. To the extent that the PCRA court described the instant claim as only being asserted "in the abstract," and thus meritless on that basis, we agree.

We also find that the PCRA court did not err or abuse its discretion with respect to its conclusion that there was no reasonable probability that expert rebuttal testimony would have changed the outcome of the proceeding given the overwhelming evidence of Appellant's guilt. Here, the Commonwealth presented expert testimony from Detective David Schanes on the subject of crash reconstruction, and he testified that Mr. Paciello came to a final rest at distance of 182 feet from the point of impact and that Appellant was driving at least fifty miles per hour in a thirty-five mile-per-hour zone when he struck and killed Mr. Paciello. N.T. 2/8/17, 88-97, 156-61.

Appellant proposed in his *pro se* PCRA petition that a rebuttal expert would have been helpful to challenge Detective Schanes' testimony in three respects. First, he alleged that Detective Schanes used a flawed formula for making his speed estimate. *Pro Se* PCRA Petition, 2/13/20, 23 ("there are plenty of research papers and studies that show that the 'Searle' formula that Detective Schanes used for his speed estimations is not only outdated … but is also the wrong formula for that type of accident here … the Searle formula is inappropriate for forward trajectory accidents.") (emphasis removed). Second, he asserted that Detective Schanes had insufficient training to allow him to be up to date on more recent research on accident reconstruction

studies. *Id.* at 24 ("It also likely would have shown that Detective Schanes' lack of training for 18 years had him out of touch with the relevant up-to-date science for accident reconstruction"). Lastly, he asserted that there were flaws in the detective's methodology that could have been highlighted by an expert. *Id.* ("The expert said things like Schanes failing to record the Event Data Recorder information from the truck in question and failing to take more consideration of the 'wrap and carry' involved in this accident (which would have changed the 'throw distance' of Mr. Paciello) were fatal flaws to the investigation's accuracy.").

Each of Appellant's proposed uses for a rebuttal witness, however, were the subject of trial counsel's extensive cross-examination of Detective Schanes. *See* N.T. 2/8/17, 102-03 (addressing the detective's lack of documentation for formal training following a 1999 collision reconstruction case beyond a training that occurred in 2005); *id.* at 243-44 (review of the formula applied by the software used by the detective to determine the truck's speed at the time of the impact); *id.* at 247-48 (confronting the detective about the lack of acknowledgement of "wrap and carry" involvement in his accident reconstruction report); *id.* at 249-53 (questioning about the applicability of the Searle formula and how the formula does not factor in individual shapes of particular models of vehicles and the size or shapes of pedestrians struck in collisions); *id.* at 254-56 (questioning about the use of a Leica Scanner to determine the speed of Appellant's truck as it was viewed in a video showing the truck decelerating after the impact); *id.* at 259-60

(questioning about the possibility of recovering information from the event data recorder from Appellant's truck and the confirmation that an attempt for recovery was made and the recorder was "blank").

Our review of the cross-examination of Detective Schanes supports the PCRA court's lack of prejudice conclusion. Trial counsel adequately challenged the detective's analysis on the point of the impact and the manner in which he calculated the speed of Appellant's truck at the time of the impact. By contesting the point of impact to begin with, counsel tried to undermine the entire methodology used by the expert. Rebuttal by another expert witness would not have yielded a reasonable likelihood of a different trial outcome for Appellant. Detective Schanes acknowledged a lack of recent training on accident reconstruction in the years leading up to the accident, but his expert status was still accepted by the trial court upon *voir dire* review. The testimony revealed that there was no additional information to be gleaned from the event data recorder from Appellant's truck and the detective explained how the use of the available video evidence assisted his calculations made in this case. Further challenging the applicability of the Searle formula and its inability to address particular shapes of individual vehicles with the use of a rebuttal expert likely would not have had an exculpatory impact on the verdict. Finally, where the launch distance of the victim was 182 feet, the evidence easily permitted the jurors as the trier of fact to conclude that Appellant was traveling at a speed well above the posted speed limit at the time of the impact and thus his recklessness caused the death of the victim.

We agree with the PCRA court that there was overwhelming evidence of Appellant's guilt and that Appellant was unable to show prejudice by demonstrating that a successful petition for rebuttal expert funds would have resulted in a different trial verdict. *See, e.g., Commonwealth v. Treiber*, 121 A.3d 435, 466 (Pa. 2015) (Trieber's claim of ineffective assistance based on the failure to call an arson expert to rebut the Commonwealth's arson testimony from a state fire marshal was meritless where Treiber failed to argue that trial counsel's cross-examination of the fire marshal was inadequate and appellate review demonstrated that counsel effectively cross-examined the fire marshal and elicited helpful testimony in support of the defense's theory of the case).

**C.**

In the remaining claim, Appellant asserts that the PCRA court erred by denying him an evidentiary hearing. Appellant's Brief at 16-21. The PCRA court denied a hearing based on Appellant's supposed lack of compliance with 42 Pa.C.S. § 9545(d)(1) due to his failure to append completed certifications for his proposed witnesses with his petition. PCRA Court Opinion, 1/17/23, 6-7. The court also denied a hearing because Appellant's claims were "meritless on their face." *Id.* at 7. Our above discussion of Appellant's ineffective claims supports the PCRA court's latter holding. *See Commonwealth v. Clark*, 961 A.2d 80, 85 (Pa. 2008) (where a PCRA petition does not raise a "genuine issue of material fact," the reviewing court is not required to hold an evidentiary hearing on the petition).

With respect to Appellant's ineffectiveness claim concerning the jury instruction as to his prior conviction in Alabama, we have concluded that the trial court's initial instruction did not include a misstatement of law when the instruction is read in its proper context. In the alternative, we have held that any ambiguity with that instruction was ultimately cured by a second instruction about the prior conviction that the court included in its final jury instructions and thus Appellant could not prove prejudice on that claim. Because the instructions did not mislead the jury, there was no need for testimony from trial counsel to discuss his views on the instructions or his failure to take any actions with respect to the initial instruction.

As for the ineffectiveness claim concerning the failure to secure funding for an expert rebuttal witness, we have held that Appellant could not prove prejudice because his trial counsel effectively cross-examined the Commonwealth's expert witness and there was no likelihood that expert testimony would have changed the verdict given the overwhelming evidence of Appellant's guilt. With respect to either claim, there was no apparent need for an evidentiary hearing and the PCRA court properly denied one on that basis.[6] *See Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011) (no evidentiary hearing required where there are no genuine issues of material facts, no relief is due, and the hearing would serve no legitimate purpose).

_____

[6] Given that we discern that there was no need for a hearing and that Appellant's ineffectiveness claims were meritless on their face, we need not address whether Appellant's certification for a hearing complied with Section 9545(d)(1).

## IV.   CONCLUSION

For the foregoing reasons, we conclude that the PCRA court did not err or abuse its discretion in dismissing Appellant's post-conviction petition without a hearing.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/11/2024